[S. F. No. 8821.   Department One.—February 10, 1919.]

In the Matter of the Estate of JOSEPHINE A. PHELPS, Deceased.   VIRGINIA A. LORD, Respondent, v. W. F. CHIPMAN et al., Appellants.

ESTATE OF DECEASED PERSON—WILL—TRUST—ANNUITIES—HOW PAYABLE.—Where a decedent by her will gave life estates in certain properties to each of two of her sisters and devised the residue of the estate, including the first-mentioned property after the termination of the life estates, but excluding certain personal property specifically bequeathed, to her "executors and trustees" in trust for the purpose of leasing until sold, as therein provided, all her real estate, and until the accumulation of a certain fund, from the time of her death, to pay monthly out of the net income of the estate, from whatever source accruing, to named sisters and brothers certain annuities, it being provided that, if the income in any month be insufficient to pay all of the annuities in full, the executors and trustees should pay the annuities to two sisters in full and prorate the balance among the remaining annuitants, and whenever there should be more than sufficient to pay all the annuitants in full, payment to be made to such annuitants as had not received their annuities in full a sufficient sum to make up the deficit without interest; and the will then directed "the executors and trustees" to sell sufficient of the property to create a certain fund, to invest and keep invested the sums derived from such sales, and use the income from that money in payment upon the above annuities until the entire fund is raised, and thereafter to invest and keep such fund invested and pay the net income therefrom to said annuitants in certain proportions, upon the death of a beneficiary the *corpus* of the fund to go to the successors in said proportions, and the surplus of the estate, after providing said fund, to be sold and the proceeds paid to specific parties and the excess, if any, to go to certain named relatives, the testator expressing the wish that the estate be converted to cash, but not sacrificed—from a proper construction of the will it is apparent that the annuities are not made a charge on the general assets

of the estate, nor upon the net income of the entire estate, and the phrase, "net income of my estate from whatever source accruing," refers only to the net income of the property set apart for the trust purposes.

ID.—DUTIES OF THE EXECUTORS AND TRUSTEES.—Where a testatrix devises and bequeaths certain property to her "executors and trustees" in trust for certain specified purposes, the purpose of the trust thus created is a duty devolving upon the persons named as "executors and trustees" in their capacity as trustees, and forms no part of their duty as executors in the administration of the estate proper.

ID.—TRUST PROPERTY—WHEN VESTS — POWER OF PROBATE COURT.— Property of the estate of a deceased person bequeathed and devised to trustees by will vests in them immediately upon the death of the testatrix, and the superior court, sitting in probate, cannot direct them in their capacity as trustees, with respect to their duty in carrying out the trust; and an order directing the executors, as such, to pay annuities provided for by a trust created by the will, during the administration of the estate, is erroneous.

ID.—CONSTRUCTION OF WILL—INTENTION.—In the construction of a will it is the intention of the testator that must be ascertained, and when that is found it controls the disposition of the property.

ID.—PAYMENT OF ANNUITIES—RULE.—The principle that when a testator bequeaths a life annuity in such a manner as to show a separate and independent intention that the money shall be paid to the annuitant at all events, that intention will not be permitted to be overruled merely by a direction in the will that the money is to be raised in a particular way or out of a particular fund, is not applicable where there is a positive intent shown that the annuitant's shall not receive more than the net income will supply.

APPEAL from an order of the Superior Court of San Mateo County directing the executors of the estate of a deceased person to sell property of the estate and out of the proceeds to pay a certain amount alleged to be due upon an annuity. Geo. H. Buck, Judge. Reversed.

The facts are stated in the opinion of the court.

W. C. Sharpstein, for Appellants.

Ross & Ross, for Respondent.

SHAW, J.—Virginia A. Lord filed a petition in the matter of the administration of the estate of Josephine A. Phelps, de-

ceased, to obtain an order construing the will of the said decedent and directing the executors to pay to her certain sums of money alleged to be due her under the terms of said will. Thereupon the court made an order directing the executors to sell property of the estate and out of the proceeds to pay to the petitioner the sums claimed by her to be due to her at that time under said will. From this order said W. F. Chipman and Union Trust Company, as executors of the said will, appeal.

The decision of the case depends upon the meaning and effect of the will, and upon the law of this state regarding the jurisdiction and powers of the superior court sitting as a court of probate in the administration of an estate.

The second article of the will nominated Chipman and the Trust Company "as executors and trustees of this my will." The third article gave to the petitioner, Mrs. Lord, the use of the dwelling-house of the decedent, and the inclosed premises surrounding it, and certain personal property thereon, during her life. The fourth article gave to Eugenie H. Schroeder the use during her life of certain property of small value. The fifth article opens as follows:

"Fifth. All the rest and residue of my estate, including the property described in the two preceding articles, after termination of the life estates of my said sisters Virginia A. Lord and Eugenie H. Schroeder respectively therein, but excluding the personal property described in the sixth and seventh articles hereof, I devise and bequeath to my executors and trustees in trust for the following uses and purposes:

"A. To lease until sold as hereinafter provided all of my real estate upon such terms as to them may seem best, and until the accumulation of the fund hereinafter provided, I direct my executors and trustees from the time of my death to pay monthly out of the net income of my estate from whatever source accruing, to my sisters and brothers hereinafter named, the annuities set opposite their respective names, to wit:

"1. To my sister Virginia A. Lord three hundred dollars.

"2. To my sister Eugenie H. Schroeder three hundred dollars.

"3. To my brother Edward T. McLean and his wife Mattie McLean jointly and to the survivor of them one hundred dollars.

"4. To my sister Amanda A. Swasey one hundred dollars.

"5. To my brother Alfred A. McLean one hundred dollars.

"Should the income in any month be insufficient to pay all of said annuities in full, I direct my executors and trustees to pay the annuities to my sisters Virginia A. Lord and Eugenie H. Schroeder in full and prorate the balance among the remaining annuitants, and whenever there shall be more than sufficient to pay all of said annuities in full, I direct my said executors and trustees to pay such annuitants as have not received their annuities in full a sufficient sum to make up such deficit but without interest."

The will then proceeds to direct the "executors and trustees" to sell sufficient of the property to create a fund of two hundred and forty thousand dollars, and to invest and keep invested the sums derived from such sales and use the income from that money in payment upon the above annuities until the entire fund is raised, and then and thereafter to invest and keep such fund invested and pay the net income therefrom to said annuitants in the following proportions, to wit: Three-eighths to Mrs. Lord, three-eighths to Mrs. Schroeder, one-twelfth to Edward T. and Mattie McLean jointly, one-twelfth to Amanda A. Swasey, and one-twelfth to Alfred A. McLean. Upon the death of these respective beneficiaries the *corpus* of the fund is to go to certain successors of them respectively in the proportions above stated. The surplus of the estate remaining after providing for said fund is to be sold and the proceeds paid by the executors and trustees to a number of persons in specific amounts aggregating two hundred and eighty thousand six hundred dollars, and the excess, if any, is to be paid in equal parts to Mrs. Lord, Mrs. Schroeder, and the said W. F. Chipman, her nephew. The final clause of the fifth article was as follows: "Although it is my intention to have all of my estate, with the exceptions already stated, converted into cash, I desire that my executors and trustees shall make sales with the sole object that my two sisters and my nephew above mentioned shall receive substantial sums out of the remainder of my estate. My estate at present valuations is ample for that purpose, and I do not wish it sacrificed to satisfy the importunities of those, who while dear to me, are not the first in my affections." The entire estate was of the value of $535,860.17, according to the appraisement returned by the executors.

The decedent died on December 5, 1916, the will was admitted to probate, letters testamentary were issued to the aforesaid persons named as "executors and trustees," and they have ever since been acting as executors of the estate. On June 15, 1917, all the persons named as annuitants in the above-quoted clause of the will, and the said executors, entered into a stipulation, in pursuance whereof the court made an order directing said executors to pay out of the general assets of the estate from the time of the death of said decedent to June 5, 1917, to Mrs. Lord and Mrs. Schroeder, the sum of two hundred dollars a month each, and to the other annuitants respectively, two-thirds of the sums directed by the will to be paid to them during the aforesaid period, and thereafter, during the administration of the estate, to continue to pay monthly to each of the said annuitants, two-thirds of their respective annuities. The appellants pleaded this stipulation and the order thereon as an adjudication of the matter and as a bar to the relief applied for. The court found that the stipulation was not entered into in settlement or compromise of the respective claims of the said annuitants, and its conclusion was that the order thereon did not bar them from afterward claiming the remainder of the said annuities out of the general assets of the estate or otherwise.

The order appealed from recites that there was no net income from the estate of the decedent and would not be for a long time in the future, nor any money or funds in the possession of the executors with which to pay the annuity to Mrs. Lord, and it directs that the executors forthwith proceed to sell, subject to confirmation by the court, property of the estate to obtain money to pay the sum of one thousand three hundred dollars, due at the time upon the aforesaid annuity to Mrs. Lord, and thereafter, until the net income of the estate was sufficient to pay said annuity, to continue to convert the general assets of the estate into money and therefrom to pay the said annuity monthly as it became due. It proceeds upon the theory that the will does not make the annuities payable exclusively out of the net income of the estate and that the general assets may be resorted to for that purpose; that the sums paid under the prior order above recited were payments on account and should be credited upon the sums due under the will from the date of the death of the decedent to the time of making the order; that the balance unpaid should be paid

out of the funds raised by sales, so as to make complete payment of the entire annuity up to that time; that thereafter the entire annuity should be paid out of the general assets of the estate whenever it was necessary to resort to them for that purpose; and that all this was to be done and could be done by the executors, prior to distribution, and as part of their duties as executors in the administration of the estate.

The respondent relies on subdivisions 2 and 3 of section 1357 of the Civil Code, which are as follows:

"2. A legacy is demonstrative when the particular fund or personal property is pointed out from which it is to be taken or paid; if such fund or property fails, in whole or in part, resort may be had to the general assets, as in case of a general legacy;

"3. An annuity is a bequest of certain specified sums periodically; if the fund or property out of which they are payable fails, resort may be had to the general assets, as in case of a general legacy."

The provisions regarding payment of general legacies out of general assets are found in section 1360. It describes the order in which the general assets may be resorted to, and makes all the property of the testator available for that purpose.

The appellants insist that this theory is contrary to law and that it involves an erroneous construction of the will. Their position is that the annuities are payable only out of the trust property and not out of the general assets, and that these interim annuities are not to be paid except out of the net income and the interest derived from the proceeds of sales accruing during the time when the two hundred and forty thousand dollar trust fund is being accumulated.

The third and fourth articles of the will give to Mrs. Lord and Mrs. Schroeder, respectively, for life, the use of certain parts of the property of the estate. This life interest is not included in the property given in trust. The fifth and seventh articles make an absolute disposition of certain personal property, and this also is excluded from the property given in trust. It necessarily follows, therefore, that the annuities are not made a charge on the general assets of the estate, nor upon the net income of the entire estate, since these parcels of property are entirely excluded from the provisions of the trust under which the annuities are payable. It is a necessary con-

clusion, therefore, that the phrase, "net income of my estate from whatever source accruing," in the second paragraph of the fifth article of the will, refers only to the net income of the property set apart for the trust purposes and not to the income of the entire estate. At all events, this trust property is the only property that can be looked to for the payment of the annuities.

The performance of the trust created by the fifth article of the will is a duty devolving upon the persons named as executors and trustees in their capacity as trustees. It forms no part of their duty in their capacity as executors in the administration of the estate proper. Furthermore, the trust property was given to the trustees and vested in them immediately upon the death of the testatrix, and the court, sitting in probate, cannot direct them in their capacity as trustees, with respect to their duties in carrying out the trust. The order appealed from does not even purport to direct them as trustees, but is addressed to them solely as executors. This is fully settled by the authorities. In *Estate of Mackay*, 107 Cal. 303, [40 Pac. 558], the testator in his will declared that he bequeathed "to my said executors in trust," fifteen thousand dollars, and directed them to invest the same and pay the income to Hattie Schenck during her life. The court below made an order directing the executors, as such, to invest the money and pay the income to the beneficiary during administration of the estate. This court declared that the interest thus given to her was not a legacy payable directly to her and that she was under no circumstances entitled to receive any part of the principal, but that the principal was to be received and held by the trustees; that they were the only parties to whom the probate court could order it paid, and that such order would constitute a distribution of the estate, partial or final; that the only right of the beneficiary during administration was the right to ask for a distribution of the fund to the trustees, that all that "she is entitled to is payment by the trustees of the income of the specific fund *after distribution of such fund to them*," and that the court had no power to do more than to distribute the principal to the trustees, and was not authorized to order payment to the respondent of any sum from the funds of the estate. The latter portion of the opinion declaring that the provision for Hattie Schenck was a legacy for maintenance under section 1369 of the Civil Code,

and that it bore interest from the death of the testator, was inserted in the way of a direction to the trustees as to the control of the fund after distribution thereof to them. The authorities elsewhere are to the same effect. "The appointment to a trust under the will, not essential to the office of an executor, does not constitute the trustee an executor according to the tenor, for the offices of an executor and of a trustee are distinct, and may be vested in different persons, and when they are vested in the same person, the functions of each are nevertheless to be performed by him in the respective capacity, the probate court having jurisdiction over him in the one, but not in the other capacity; and an administrator *de bonis non cum testamento annexo,* appointed after the death of an executor who was also appointed trustee in the will, does not *virtute officii* succeed to the trust. But where the testator uses the word 'trustee,' and imposes duties involving the functions of an executor, this will be held a good appointment as executor." (1 Woerner on Administration, p. 504.) The authorities cited by the author fully support the text. (*Wheatly* v. *Badger,* 7 Pa. 459; *Creamer* v. *Holbrook,* 99 Ala. 52, [11 South. 830]; *Smith* v. *Smith,* 15 Wash. 239, [46 Pac. 249].) From these authorities it is clear that the court had no authority to make orders directing the executors, as such, to pay the annuities during the administration of the estate.

We are also of the opinion that even if the order were otherwise proper, the court erred in its conclusion that the general property of the trust fund could be resorted to to supply any deficiency of the net income to pay these annuities. Taking the trust provision as a whole it does not fairly bear this construction. It is the intention of the testatrix that must be ascertained, and when that is found it controls the disposition of the property. The express language is that the annuities are to be paid "out of the net income," and there is no word or phrase indicating an intention to make their payment a charge upon the general trust property itself, or a purpose that they should be paid at all events, regardless of the sufficiency of the net income. "The leading principle of the cases is that, when a testator bequeaths a life annuity in such a manner as to show a separate and independent intention that the money shall be paid to the annuitant at all events, that intention will not be permitted to be overruled merely by a direction in the will that the money is to be raised in a par-

ticular way or out of a particular fund." (3 C. J. 216, sec. 34, note to 50 [a].) There is no such intention discernible from the terms of this will. The immediately succeeding clause of the trust article shows a positive intent that the annuitants should not receive more than the net income would supply. It declares that if in any month the income was insufficient to pay all the annuities in full, that then Mrs. Lord and Mrs. Schroeder should have preference over the others; that the others should take the balance, if any, *pro rata,* and that thereafter whenever there should be more than sufficient income therefor, the arrears upon the annuities should be paid "but without interest." Except for the quoted phrase the annuities would bear interest from the date of the death of the testatrix. (Civ. Code, sec. 1370.) Here, therefore, is a direct statement that if the income is insufficient to pay the annuities in full, not even interest thereon shall be paid from any subsequently accruing income, much less from the principal. It is a clear indication of the intent by the testatrix that the income alone should be resorted to for such payment. This is further indicated by the next provision to the effect that when money is derived from sales before the entire sum of two hundred and forty thousand dollars is accumulated, such money is to be invested as fast as obtained and the income therefrom applied to pay the said annuities as far as it would go. It is obvious from this provision that the testatrix did not contemplate or intend that the proceeds of the sales so made should go to pay the annuities and that her understanding was that only the interest of such proceeds should be so applied. The provision shows that she could not have contemplated that the entire annuities should have been paid in the meantime by the application of the proceeds of sales thereto. The final clause in the trust article declares the desire and expectation of the testatrix, that after realizing the two hundred and forty thousand dollars intended as a provision for the annuitants, and the additional sum of two hundred and eighty thousand six hundred dollars to be paid in specific legacies out of the surplus, there will still remain a substantial sum to be divided between her two sisters and her nephew, the ultimate beneficiaries. Manifestly she did not suppose in framing this article that the *corpus* of the trust property might be largely depleted by sales thereof to pay the annuities pending admin-

istration or pending the conversion of the entire assets into money.

The general conclusion from the whole case is that the court below erred in making the order appealed from and that it has no power to direct the executors in their executorial capacity, to pay the money derived from the trust property to the beneficiaries of the trust.

This conclusion makes it unnecessary to determine whether or not the order made in pursuance of the stipulation of the respective annuitants is an adjudication upon the merits of their claims to full payment, either out of the net income or out of the *corpus* of the trust property. That question must remain until the administration of the trust property comes before some court for determination.

The order appealed from is reversed.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.

All the Justices concurred.