[Civ. No. 9414. First Appellate District, Division One.—July 6, 1934.]

In the Matter of the Estate of MARY T. EMERSON, Deceased. HOMEOPATHIC FOUNDATION OF CALIFORNIA, Appellant, v. JOHN A. SULLIVAN et al., Respondents.

THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY, Appellant, v. JOHN A. SULLIVAN et al., Respondents.

John L. McNab, William H. Jordan, Robert Littler, George J. Presley and Louis S. Beedy for Appellants.

Charles A. Christin, Percy E. Towne and Cooley, Crowley & Supple for Respondents.

TYLER, P. J.—The question involved on this appeal is whether or not, under the will of the decedent, sums provided therein for the support of certain beneficiaries are chargeable against the *corpus* of the trust estate, the income therefrom being insufficient for the purpose.

Decedent died February 12, 1930, leaving a will dated December 4, 1929, and a codicil thereto dated January 31, 1930. The will and codicil were admitted to probate and John A. Sullivan, Carlo Serbolisca and George E. Lask were appointed executors thereof. By her will decedent bequeathed general legacies aggregating $15,500 to certain

associations and employees. The residue and remainder of her estate was devised and bequeathed to trustees in trust for certain purposes. This original provision was revised under the codicil referred to. By the terms of the codicil decedent devised and bequeathed the residue to the persons named as her executors and to the Bank of California in trust as follows: To receive the interest and income therefrom and to pay the same: (1) To Carlo Serbolisca, $1,000 per month during his natural life. (2) To Virginia Weill, $100 per month during her natural life. (3) The balance of the net income to be paid annually in reduction of a mortgage held by the Hibernia Savings and Loan Society on certain real property. (4) Upon payment of said mortgage the balance of the net income to be paid various institutions annually in specific proportions. The codicil further provided that upon the death of said Carlo Serbolisca and Virginia Weill the trust was to cease and the *corpus* of the estate was to be distributed to certain institutions in specified proportions. The codicil also contained a direction to the executors to pay to Carlo Serbolisca $1,000 per month and to Virginia Weill $100 "during the probate of my estate, which allowances are for their maintenance and support". The will provided that certain real property, which constituted the bulk of the estate, might be sold and the net proceeds invested in United States government bonds so that the income would always be paid monthly to Serbolisca and Virginia Weill. Nothing was done by the executors under their authority to sell. The value of the property decreased steadily from the date of the death of the testatrix; rents declined, vacancies increased and the income diminished to the extent that it was no more than sufficient to pay taxes and the interest on the mortgage. The monthly payments to the annuitants could not be paid out of the income and Virginia Weill filed a petition for an order requiring the executors to pay the delinquent installments out of the *corpus* of the estate. The probate court granted the petition and made an order requiring the executors to make application to the bank for an increased loan not exceeding $10,000 for the purpose of securing funds to pay the annuities and other obligations of the estate. The amount of the mortgage held by the bank was the sum of $90,000. The bank refused to grant the increased loan, and

in consequence no payment has been made to the annuitants. Nevertheless, appellants, residuary legatees, have appealed from the order.

It is their claim that the annuities are gifts of income only and that it was not the intention of the testatrix to invade the *corpus* of the trust estate to supply any deficiency of the net income to pay these annuities. In support of this contention it is argued that there is no word or phrase indicating any intention to make their payment a charge upon the general trust property itself, or a purpose that the trustees should pay at all events, regardless of the sufficiency of the net income; but, on the contrary, the language of the will and the character of the dispositions embraced in it not only negative an intent that *corpus* might be used, but establish an intent that it should not be so used. In this connection appellants draw our attention to the fact the will provides that after the payment of the annuities the net income is to be paid to certain named institutions and the *corpus* is not to be disposed of until after the death of such annuitants. The fact that there is a specific devise over without limitation is stressed as indicating that the *corpus* was not to be charged. We are cited to several cases in support of the construction contended for by appellants.

In the construction of wills, the intention of the testator controls and, as it is admitted, citation of authority is seldom useful as the intent of a testator is to be ascertained from the will itself. It is perfectly manifest from a reading of the will and codicil that it was the main and primary concern of the testatrix to take care of the two annuitants during their respective lives. The share of the remaindermen was postponed until the annuitants had been cared for during their lives. It is clear from a reading of the will and codicil that the testatrix was more solicitous about the welfare of the two annuitants than she was of the remaindermen. Her intent in this connection is plainly indicated by the terms of the codicil, for her executors were directed to pay such annuitants the amounts provided, during the probate of her estate, for their maintenance and support. There is no provision for the enjoyment of the *corpus* by the remaindermen until after both these preferred annuitants are dead. In short, the entire instrument shows conclusively the intent of the testatrix was that the

annuitants should be maintained and supported regardless of the source from which the funds for that purpose should come. There was no intent indicated to keep the *corpus* intact for the remaindermen. (*Comstock* v. *Herron*, 55 Fed. 803; *Mulcahy* v. *Johnson*, 80 Colo. 499 [252 Pac. 816].) The construction placed upon the instrument by the learned trial court is in our opinion correct.

Respondents raise the point that the appeal is not well taken for the reason the order is not appealable, as it is not one set forth in section 1240 of the Probate Code. While we are of the opinion that there is merit in the objection, the question would be raised following distribution. For this reason we have decided the appeal on its merits.

The order.is affirmed.

Cashin, J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 4, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 30, 1934.