[L. A. No. 19201. In Bank. Apr. 30, 1946.]

Estate of WILLIAM F. MARKHAM, Deceased. CHRIS-
TIAN SCIENCE BENEVOLENT ASSOCIATION, Ap-
pellant, v. HARLAN G. PALMER, Respondent.

Lindstrom & Bartlett and Ralph G. Lindstrom for Appellant.

Harlan G. Palmer, Sr., Guy S. Pratt, O'Melveny & Myers, Louis W. Myers and Pierce Works for Respondent.

CARTER, J.—William F. Markham died in 1930. By his will admitted to probate in that year, he named his wife executrix thereof, and trustee of a trust created thereby. The will devised the home property and furnishings to his wife for life, remainder to the children of Mr. and Mrs. Harlan G. Palmer, Sr., and the residue to his wife in trust as follows: "From the gross income received or derived from the trust estate, or from the principal thereof, if the Trustee deem that necessary or advisable, there shall first be paid and discharged all taxes, assessments, costs, attorney fees, charges and expenses incurred in the care, administration, distribution and protection of the trust estate and the protection of this trust and its defense against legal or equitable attack by any person, both during and after probate administration upon my estate.

From the net income of said estate, shall be by said Trustee paid, the following: (1) To my daughter, Maud L. O'Brien . . . ($250.00) a month during her natural life. (2) To my son, Leigh H. Markham, . . . ($250.00) a month during his natural life. (3) To my sister, Louise Markham, . . . ($100.00) a month during her natural life. (4) To my friend and chum, Ben S. Sprague, . . . ($250.00) a month during his natural life. (5) To my gardener, Ed. Jenkins, the sum of One Hundred Fifty Dollars ($150.00) a month, during such time as he is employed by my Executrix or Trustee for work in connection with the estate hereby left by me. (6) To my niece, Isa Markham, . . . ($150.00) a month during her natural life. (7) To my friend and foreman, E. S. Roe, . . . ($150.00) a month during his natural life. (8) To my wife, Blanche C. Markham, such part of the remaining income as she may desire to use for any or all of the following purposes: for the maintenance, care and protection of the homestead; for her personal pleasure, support, maintenance and enjoyment of the best of clothing, automobiles, travel and luxuries contributing to her happiness and comfort.

"All of the above bequests are payable as soon after my death as funds are available.

"I direct that my said Trustee shall accumulate, during her natural life, any income from trust moneys or trust property not applicable under any of the trusts, powers, or provisions herein contained, by investing the same, and all the resulting income thereof, from time to time, in or upon any such stocks, funds or securities as are hereinbefore authorized for investments, for the benefit of the children of the union of Harlan G. Palmer, Sr., and Ethelyn Hunkins Palmer, share and share alike.

"Upon the death of my wife and Trustee, . . . I direct that Harlan G. Palmer, Sr., shall succeed her as trustee and that he shall hold of my estate such part as may be approved by court as ample to provide income for the payments directed in subdivisions one (1) to seven (7) in this 'Fourth' clause, and shall distribute, free from this trust, the balance of the estate, together with any undistributed net income, to the children of the union of Harlan G. Palmer, Sr., and Ethelyn Hunkins Palmer, share and share alike.

"Upon the completion of all the trusts mentioned in clauses one (1) to eight (8) in this 'Fourth' clause, I direct that the remainder of my estate, together with any undistributed net income thereon, be given free from this trust, to the said Palmer children, share and share alike.

"Each and every beneficiary under this trust is hereby restrained from and is and shall be without right, power or authority to sell, transfer, pledge, mortgage, hypothecate, alienate, anticipate, or in any manner affect or impair his, her or their beneficial and/or legal rights, titles, interests, claims or estates in or to the income and/or principal of the trust estate during the entire term hereof, nor shall the rights, titles, interests or estates of any beneficiary hereunder be subject to the rights or claims of creditors of any beneficiary nor subject nor liable to any process or law or court, and all of the income and/or principal under this trust shall be transferable, payable and deliverable only, solely and exclusively and personally to the above designated beneficiaries hereunder at the time entitled to take the same under the terms of this trust, and the personal receipt of the designated beneficiary hereunder shall be a condition precedent to the payment or delivery of the same by said Trustee to such beneficiary."

Mr. Palmer, mentioned in the will, was the testator's friend and personal attorney for many years. The corpus of the

trust had a value of over a million and a half dollars. Maud L. O'Brien, was eliminated from the rights granted her by the first clause of the trust listing the beneficiaries by reason of her contest of the will. (See *Estate of Markham*, 46 Cal. App.2d 307 [115 P.2d 866].)

Decedent's wife served as executrix and trustee until her death in 1937, when she was succeeded by the public administrator, and in 1941, the decree of distribution was entered distributing the trust property to Palmer in trust "upon the conditions and directions set out in the will of the decedent." Payments were made in full to the beneficiaries from the date of decedent's death until the end of 1932. In the years 1933-1936, the payments to the beneficiaries were less than the amounts specified in the will, resulting in a deficiency as to Louise Markham of $1,420. During the years thereafter the beneficiaries were paid in full. Louise Markham died in 1940, leaving her claim to that deficiency to petitioner and appellant.

On May 4, 1944, petitioner filed a petition for an order directing the trustee to pay it the deficiency claimed to be payable to its predecessor, Louise Markham. The court denied the petition on all grounds raised in objection thereto, namely, that the claim was barred by the statute of limitation, that pursuant to the spendthrift provisions of the trust the amount of the deficit could not pass by will to petitioner from the beneficiary, that it was not the intent of the testator that either future net income or the corpus of the trust could be used to make up deficiencies, and that the orders settling the annual accounts of the trustee were res judicata on the last-mentioned issue.

 In ascertaining whether or not the corpus of a testamentary trust or the excess income in future years may be used to pay the amount specified in the trust as payable to the beneficiary, it has been customary to state the issue in terms of whether the instrument established an annuity or a trust to pay income. An annuity is a periodic payment which is payable unconditionally, there being no contingency present. If the fund or property out of which the annuity is payable fails, in whole or in part, resort may be had to the general assets of the estate. (Prob. Code, § 161(3).) On the other hand the beneficiary of a trust to pay income or the legatee of an income is ordinarily dependent upon the existence of income, the amount received by him fluctuating with the in-

come. The rule is and should be that a provision that payments shall be made from the net income of the trust property compels the conclusion that neither the corpus nor income in future years may be used unless there is a clear expression to the contrary in the trust instrument. (See *Estate of Platt*, 21 Cal.2d 343 [131 P.2d 825]; *Estate of Phelps*, 179 Cal. 703 [178 P. 846]; *Estate of Brown*, 143 Cal. 450 [77 P. 160]; *In re Mackay*, 107 Cal. 303 [40 P. 558]; *Estate of Lockhart*, 21 Cal.App.2d 574 [69 P.2d 1001]; *Clayes* v. *Nutter*, 49 Cal.App. 148 [192 P. 870]; cf. *Estate of Roberts*, 27 Cal.2d 70 [162 P.2d 461]; *Crew* v. *Pratt*, 119 Cal. 131 [51 P.44]; *Estate of Watson*, 32 Cal.App.2d 594 [90 P.2d 349]; *Estate of Bourn*, 25 Cal.App.2d 590, 600-601 [78 P.2d 193]; *Estate of Oliver*, 21 Cal.App.2d 106 [68 P.2d 735]; see 2 Am.Jur., Annuities, § 19; cases collected L.R.A. 1917E 580; 136 A.L.R. 69.)

The will must be taken as it was executed, and when it provides that the periodic payments are to be made from income, and the annual income is insufficient to meet such payments, there must be a strong and express indication that it was the intention of the testator in such event to authorize an invasion of the corpus and use of future income. The testator was free to provide for a resort to the principal and future income if he so desired. In the instant case he made no such provision. To read such a provision into the will would require a clear indication from other terms of the will compelling such interpretation. As stated in *Estate of Platt, supra,* 351, where the issue was whether or not income for other years could be used to make up past deficiencies, we said: ''The plan of the testator undoubtedly contemplated an accounting period, at which time the income of the estate, less the cost of administering the trust, would be computed and distributed. In a provision of the will which authorizes advances to either beneficiary in the event of illness or other emergency, the testator refers to the source of the monthly payments to them as '*net income.*' In accordance with common business practice, the inference may properly be drawn that the testator, unquestionably an experienced business man, contemplated an *annual period* in which the expenses of administration would be deducted from the gross income received from the principal of the trust and the balance, the net income, paid to the beneficiaries. And as he disposed of all income *with no provision to meet any deficiency in the stated monthly payments to the wife,* each accounting period must be regarded separately and the net

amount earned by the trust property in each year paid to the beneficiaries as provided by the will. *Any other interpretation would require the court to write into the will provisions which the testator did not make either expressly or by implication.*

"A somewhat similar situation was presented in *Estate of Chapin*, 47 Cal.App.2d 605 [118 P.2d 499]. . . . In answer to the wife's contention that any arrearages should be paid to her before the three children, other than the son, received any payments, the court held that since the will itself did not make provision for a reserve to pay a minimum amount, *the court would not provide one by interpretation.*" [Emphasis added.] (See, also, *Estate of Roberts*, 27 Cal.2d 70 [162 P.2d 461].) In the instant case the trustee is to pay the expenses of administering the trust from the gross income *or from the principal* if he deems it necessary, indicating that the testator had in mind a situation where the principal might be used. However, when he came to provide for the beneficiaries, he expressly states that they be paid "from the net income of said (trust) estate." In the 8th beneficiary clause reference is again made to "remaining income" as being payable to his wife. Again reference is made to accumulation of "income from trust" property not applicable under any of the terms of the trust. Income is later referred to in speaking of the amount to be held by Palmer, the successor trustee of his wife, that amount being enough to provide income to pay the beneficiaries.

Moreover, in the present case there are factors supporting rather than negating the foregoing conclusion drawn from the provision in the will limiting the payments to the annual net income. ▇▇▇ A factor indicating that the corpus is not to be subject to the claim of the beneficiaries to the stipulated amounts is a gift over of the corpus upon the death of the beneficiaries. (See *Estate of Platt*, 21 Cal.2d 343 [131 P.2d 825] ; *Lynn Safe Deposit & T. Co.* v. *Martin*, 308 Mass. 443 [32 N.E.2d 247] ; *First Nat. Bank of Toms River* v. *Levy*, 123 N.J.Eq. 21 [195 A. 820] ; cases collected 136 A.L.R. 69.) The gift of the corpus and accumulated income to another on the death of the beneficiary indicates that the testator desired to benefit the remaindermen, and if the corpus or future excess income is consumed in making the periodic payments to the beneficiary, the remaindermen will receive that much less. ▇▇▇ The will under consideration stipulates that any remaining income after the first seven beneficiaries, including Louise

Markham, have been paid, shall be given to the testator's wife, implying that a surplus was contemplated and that no recourse to the principal would be necessary. His wife, the natural object of his bounty, received nothing else under the will except the home property. ■ The trustee-wife was directed to accumulate during her life any income not applicable to the trust for the benefit of Palmer's children, thus indicating that rather than have the corpus invaded or future income used, the excess income was to be accumulated for the benefit of those persons. ■ Palmer, the successor trustee, was directed to "hold" sufficient of the trust property to provide *"income"* to make the payments to the beneficiaries, distributing the balance of principal and accumulated income to the Palmer children, thus contemplating that the remaindermen should commence to share in the trust before the beneficiaries' rights had ceased by reason of their deaths. The Palmer children were not required to wait until the beneficiaries were all satisfied and then receive what was left of the remainder, if any. If the sum set aside by Palmer for the trust was insufficient to raise the income necessary, the beneficiaries would be the sufferers inasmuch as the balance would have been paid to the Palmer children. Finally, upon the completion of the trust, which, must mean upon the death of the beneficiaries, the remainder including accumulated income was given absolutely to the Palmer children. ■ It is true the testator refers to the "remainder" of the estate passing to the Palmer children, but the use of that term does not require the conclusion that the principal was to be used to pay the beneficiaries or destroy the efficacy of the gift over by implying that the corpus or future income was to be used. By referring to any undistributed income as well as the remainder of the principal, it appears that he intended the remaindermen to have the principal intact. In view of the heretofore discussed reference to net income, and the solicitude for the Palmer children as shown by the fact that they were the chief objects of his bounty, and were to receive some benefits even during the life of the other beneficiaries, we do not believe that the use of the term "remainder" should be construed to mean that the remaindermen were to receive only what was left after the beneficiaries had been paid by resorting to the principal.

Appellant relies upon *Estate of Emerson*, 139 Cal.App. 571 [34 P.2d 800], but in that case the will provided that the real property, which formed the bulk of the estate, should be sold

and government bonds bought instead, and the deficiency of income arose out of the fact that this provision of the will was not followed and the income of the real property was decreased to an extent that the bequests of income could not be met although they could have been met had the will been properly executed. Thus the question was whether the beneficiaries of the income or the remaindermen should be affected by the deficiency which arose from improper execution of the will and the court solved that question by concluding from the will "that the testatrix was more solicitous about the welfare of the two annuitants than she was of the remaindermen." Moreover, the court in the Emerson case failed to give due consideration to the source of the payment as being the net income, the importance of which we have mentioned above.

■ Appellant urges that the sentence: "All of the above bequests are payable as soon after my death as funds are available," requires a resort to the corpus and future income. That is not sufficient basis for overcoming the clear meaning of the direction that the beneficiaries be paid out of net income. The meaning of funds available must be found by reference back to what funds are to be used. Those funds are the net annual income and hence are not the corpus or future income. Moreover, it relates to the time that the trustee's duty arises to pay the income—that he may be compelled to pay it rather than specifying the source of payment, and, as said in *Estate of Platt, supra,* at p. 346: "In a majority of cases it has been held that, unless the testamentary trust was created for the support or maintenance of the beneficiary, the income accrues from the date of distribution. . . . Apparently the controlling factor in the decision of these cases was the inability of the beneficiary to compel the payment of any income prior to the distribution of the trust property to the trustees. That fact, however, is not determinative of the question for, as has been recently stated, the rule which precludes a beneficiary from suing to recover income during the period of administration relates only to the time at which the trustees may be compelled to make payment, and does not determine the date at which the right to income commences. (*Estate of Marré,* 18 Cal.2d 184, 190 [114 P.2d 586].)"

■ The argument is made that by reason of the kinship of Louise Markham, the sister of the testator, it is to be assumed that she would be preferred by the testator to the Palmer children, strangers in blood; that the existence of the spend-

thrift provisions are a basis for inferring that the payments to the beneficiaries were for their support and maintenance; and that therefore the testator intended the use of the corpus and future income where the annual income was insufficient. In our discussion heretofore we have shown that the testator expressed a primary regard for the Palmer children rather than his sister. Assuming the spendthrift provision in the will is a basis for concluding that the allowances to the beneficiaries was for maintenance, it does not follow that the corpus or future income may be reached on their behalf. If the testator had wished to insure their support he could have authorized resort to those sources. He did not do that. He showed a concern for the Palmer children. There is no compelling public policy that requires that we write into the will such a clause. If he had been so solicitous of his sister, as contended by appellant, he could have expressed himself clearly to that effect. To arrive at the result that the corpus and future income are subject to the beneficiaries' claim, it must first be inferred from the spendthrift provision that the trust was for support and maintenance. From that it must be inferred that the testator intended that these sources be used. There is no compelling policy requiring such intricate deduction to escape the plain language of the will directing the payment from net income. It is insufficient to defeat that language.

We conclude therefore that the corpus may not be invaded, that the net income is to be computed on an annual basis, and resort may not be had to income in future years to make up past deficiencies.

Appellant earnestly contends that *Estate of Platt, supra,* is distinguishable from the case at bar. It refers to the clauses in the instant will specifying that payments are to be made as soon as funds are available, that the trustee is to accumulate income not applicable under the trust, and the gift over of remainder in trust on completion of it. Those matters have been discussed above. Reference is made to the much greater value of the trust estate and income in the instant case as contrasted with the Platt case. But that should not compel the interpretation sought by appellant. As above seen, there is nothing to overcome the requirement that payment be made from net income.

It cannot be said that *Estate of Platt, supra,* is distinguishable on the ground that there was a disposition of all of the income each year or that those who were to receive the excess income were strangers to the testator. While it is true in

the instant case that the accumulated income would go to the Palmer children, still, like *Estate of Platt,* clause (8) of the trust, provides that testator's wife shall receive such part of the "remaining" income as she may "desire" to use. The preceding clauses give a certain amount to each beneficiary. If for several years the income was insufficient, the wife might not receive anything if the income in future years were used to pay past deficiencies in the payments to the first seven beneficiaries. We do not believe the testator had any such intention.

Finally, it appears that appellant claims there was error in the computation of the net income for the years 1933-1936 (when the payments to the beneficiaries were deficient) in that expenses were charged against the gross income which should have been charged against the corpus; that properly computed there would have been a net income for those years from which to pay the beneficiaries in full, and that subsequent excess income or the corpus should be used to make up those arrearages. However that contention was raised for the first time on this appeal. Indeed it was not raised until the brief was filed in this court on hearing granted after decision by the District Court of Appeal. The appellant's petition in the court below, while asserting there is presently excess income to meet prior deficiencies, does not allege that there was sufficient income during the years of deficiency, 1933-1936. Also it must be remembered that many years have passed since the alleged deficiencies, the executrix is dead, the estate is distributed, and diligence has not been shown in attempting to correct the asserted error in computation of the income. For those reasons the point will not be considered.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., and Peters, J. pro tem., concurred.

SCHAUER, J.—I dissent.

The majority opinion, as its controlling premise, announces that "The rule is and should be that a provision that payments shall be made from the net income of the trust property *compels* the conclusion that neither the corpus nor income in future years may be used *unless there is a clear expression to the contrary in the trust instrument."* (Italics added.) Without now debating the accuracy or soundness of such announced

rule of construction so far as concerns "income in future years," or the efficacy of the authorities cited in support thereof, it seems sufficient to show, as I believe the ensuing discussion does, that in the trust instrument here involved "there is a clear expression to the contrary."

As a further basis for its conclusion the majority opinion declares the proposition that "the Palmer children . . . were the chief objects of his [the testator's] bounty." With this proposition I take issue. It seems obvious to me, from a reading of the will, that the testator never contemplated that his wife or the other beneficiaries might be reduced to want over a period of years in order to preserve and augment the estate for the residuary legatees. Rather, does it seem that he wanted the residuary legatees to take only after the provisions for the others (whatever those provisions may mean) had been paid in full. It seems apparent that the testator never in reality contemplated that the net income from his large holdings would be insufficient to discharge all bequests. In other words, he intended that all bequests should be paid in full.

It is my view that in construction of the will it should be born in mind that such document was prepared by the present trustee, the respondent herein (who was the personal attorney for the testator and who is the father of the principal residuary beneficiaries), from a "written memorandum in Mr. Markham's handwriting" (*O'Brien* v. *Markham* (1940), 37 Cal.App.2d 381, 392 [99 P.2d 583]). The scrivener of the will, as succeeding trustee and father of the principal residuary beneficiaries, was not a wholly disinterested person, and certainly is not in a favorable position to claim that any ambiguities in the language in which the trust structure is phrased are to be resolved in favor of him or his children.

In language which seems reasonably clear the will directs that the small annuity with which this appeal is concerned shall be paid "From the net income of said estate . . . (3) To my sister, Louise Markham, . . . $100.00 a month during her natural life." One hundred dollars a month *"during her natural life"* seems to me to establish that it was the testator's intent that his sister should receive from his estate $100 for each and every month she lived after his demise. To now construe the reference to payment from net income as amounting to a proviso or exception to the effect that the net income of the estate should be permanently relieved from liability

for such payments as accrued during periods when there was a deficiency of net income but that the corpus should be augmented for the benefit of the residuary legatees by any surpluses of net income during prosperous years, seems to me to amount to a departure from the testamentary plan. Under this theory the immediate beneficiaries, the relatives of the testator including his widow, who were the natural objects of his bounty, could have gone hungry during many years to the end that the residuary legatees should eventually receive an augmented principal. I think we should not, in construing the will, attribute that intent to the testator unless it unmistakably appears. Under the circumstances of this case we are not bound by the construction given the will by the trial court. (See *Estate of Platt* (1942), 21 Cal.2d 343, 352 [131 P.2d 825].)

It appears to me, further, that the statement in the trust clause of the will that "all of the above [trust] bequests are payable as soon after my death as funds are available" indicates an awareness by the testator that the details of administering so large an estate as he expected to leave would in all probability be complex and consume an extended period of time, and an intention on his part that the trust beneficiaries should be entitled to the cumulative payment in full during continuance of the trust, of the respective amounts specified, "as soon . . . as funds are available" with which to pay. Moreover, the remaindermen—strangers in blood to the testator—are, by his specific direction, to take only "upon the completion of all the trusts." The trusts, I think, cannot properly be regarded as "completed" until payment has been made in full, from the net income of the estate, of the cumulated monthly income benefits. Consequently if, for any reason, it is impossible to keep the monthly payments up to date at all times, such deficiencies as occur should be met out of subsequently available net income. The further direction that "Upon the death of my wife and Trustee, . . . Harlan G. Palmer, Sr., shall succeed her as Trustee and . . . shall hold of my estate such part as may be approved by court as *ample* to provide income for the payments directed in . . . this . . . [trust] clause, and shall distribute, free from this trust, the balance of the estate, together with any *undistributed net income,* to the [Palmer] children" (italics added) also demonstrates that the testator's prime concern was to provide for the trust beneficiaries and that the Palmer children were to

take only after *ample* provision had been made to meet the trust annuities.

That the above stated view as to the relative place of the Palmer children in the testamentary plan was entertained by the District Court of Appeal in passing on related litigation is evidenced by the following passage: "In regard to the matter of the testator's intention to execute a will, we find that on January 25, 1930, Palmer received a letter written by Blanche C. Markham, at her husband's dictation. This letter stated, in effect, that for some three or four months past he and his wife had been considering the disposition of their property, and suggested that Palmer call upon them at his convenience and discuss with them the preparation of a will. Thereafter, one evening Mr. and Mrs. Palmer went to the Markham home in Glendale, where Mr. and Mrs. Markham, in the presence of Mr. and Mrs. Palmer discussed their will, and where Mr. Markham then told Mr. and Mrs. Palmer that *the Markhams* had decided to dispose of *their* property *so as to take care of their friends and relations, with the remainder to the four Palmer children.*" (Italics added.) (*O'Brien* v. *Markham* (1940), *supra,* 37 Cal.App.2d 381, 385.) If the will is to accomplish the object which Mr. Markham, in the presence of Mrs. Markham, declared to Mr. and Mrs. Palmer —"to dispose of their property so as to take care of their friends and relations, with the remainder to the four Palmer children"—it should not be so construed as to "take care of" the Palmer children *in any event* but of "their friends and relations" *in prosperous years only.* I cannot escape the belief that the majority opinion strains both recognized rules of construction and the whole testamentary plan of the will in so holding.

Of course, it is possible that the testator may have altered his object; he executed the will as drafted for him (from his notes prepared subsequent to the conversation with Mr. and Mrs. Palmer) and made its language his own. If that language explicitly requires the conclusion reached by the majority then such conclusion must be held to be the revised and final intent of Mr. Markham and should be given effect. But if the language used does not explicitly require such conclusion then it should be interpreted in the light of Mr. Markham's prior declaration of objective. I am convinced that the language of the will and its general plan, taken as a whole, admit more reasonably of a construction consistent, than of one in-

consistent, with the purpose and intent which he evidenced when declaring his objective (and that of Mrs. Markham) to Mr. and Mrs. Palmer.

The holding in the *Estate of Platt* (1942), *supra,* 21 Cal.2d 343, 351, that "each accounting period must be regarded separately and the net amount earned by the trust property in each year paid to the beneficiaries as provided by the will" is relied upon as controlling the construction and operation of the annuity provisions in the will now before us. But the language of the will construed in the Platt case, as well as the testamentary plan there set up, differs substantially from that now before us and that case seems to me to be not controlling here on this issue. If there be a repugnancy in the provisions we are to construe, it is code law that "Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract." (Civ. Code, § 1652.) The rule is equally applicable in the construction of wills. Giving effect both to the direction that the annuity shall be paid out of net income and to the direction that it shall be in amount "($100.00) a month during her natural life," appears to require the conclusion that deficiencies in annuity payments because of inadequacy in net income during any accounting periods should be made up out of net income during periods of greater earnings or smaller expenditures.

In the Platt case one of the two trust beneficiaries was the testator's widow and the other was his son, whereas the remaindermen here are complete strangers in blood to the testator. Further, the issue presented in the Platt case arose upon a provision for the *immediate* division of income between the two beneficiaries, while in the present case the issue arises between the claimant to an immediately payable annuity and remaindermen who seek the cumulation of net income in prosperous years to be added to corpus, even though the immediate trust beneficiaries have not been paid in full during abnormally low net income periods.

In the Platt case the provision of the will which was construed is as follows: "If the income from said trust exceeds the . . . $250.00 . . . per month payable to my wife . . . then my trustee shall pay said surplus income up to the sum of . . . $250.00 . . . per month to my . . . son . . . ; If there is any income in addition to the sums mentioned in the fore-

going subdivisions . . . the said surplus income over and above the sum of . . . $500.00 . . . per month shall be divided in equal shares between my . . . wife . . ., until she remarries, and my . . . son. . . ." (P. 350 of 21 Cal.2d.) The important point to note is that the quoted provision *made immediate division and distribution of all the income* no matter how large it might be. There was no authorization for accumulation of any amount of net income for a remainderman. There never could be a surplus out of which deficiencies could be paid. Concerning this provision we said (p. 351 of 21 Cal.2d) : "The plan of the testator undoubtedly contemplated an accounting period, at which time the income of the estate, less the cost of administering the trust, would be computed and distributed. . . . *And as he disposed of all income* with no provision to meet any deficiency in the stated monthly payments to the wife, each accounting period must be regarded separately and the net amount earned by the trust property in each year paid to the beneficiaries as provided by the will." (Italics added.) But in the case at bar the testator obviously contemplated that the aggregate of all the payments to the immediate beneficiaries would be less than the net income and that there would be surpluses of such net income which should be accumulated. Since he did not make disposition of all income as it accrued the controlling reason for the Platt case holding that the income distribution plan there set up necessarily presupposed the use of accounting periods and the final determination of the income distribution for each period as it occurred is nonexistent here. In the Platt case, as previously indicated, there never could be a surplus of net income in any accounting period because the total net income for each period was disposed of in that period. But in the case at bar it appears that there will normally be a surplus of net income in each period. No language in the will now before us has been pointed to which forbids the use of such surpluses for making up deficiencies which may occur in the payments of annuities during periods of inadequate net income. On the contrary, every provision of the will, when read and construed as a whole and in the light of the circumstances shown, is consistent with the view that the annuities shall be paid in full from net income "as soon . . . as funds are available" regardless of the accounting period in which earned, and the will as a whole, in the light of the undisputed circumstances, is inconsistent with the view that the annuities for any accounting period need never be paid unless the net income for that

particular period is adequate. The testator, it will be remembered, explicitly directed that the remaindermen shall take only "upon completion of all the trusts" and that the succeeding trustee "shall hold of my estate such part as may be approved by court as ample to provide income for the payments directed." That direction surely was not intended by the testator to be interpreted as meaning merely sufficient to provide for such payments during prosperous years.

As a special defense to the petition for an order directing the trustee to pay accrued annuities, the trustee alleged "That the . . . Court has heretofore ruled and made its order that this Trustee does not owe the successors in interest of said M. Louise Markham, Deceased, for said alleged unpaid annuities . . . reference being hereby made to the Objections to First Account Current of Trustee and Request for Payment of Annuities, filed herein by . . . [the] Executor of the Will of Louise Markham, deceased, and the Answer to same filed by this Trustee, and the ruling and order made thereon by this Court on the 28th day of May 1942, overruling said objections, and said matter and the issues involved in the within petition . . . are Res Adjudicata, pursuant to Sections 738 and 1908 of the Code of Civil Procedure . . . , said order above referred to having become final and no appeal having been taken therefrom." The court decided in favor of the trustee on the issues raised by this defense. In my view of the case such decision cannot be sustained. That it cannot be sustained the majority opinion, by silence on the subject, apparently concedes but does not expressly so declare. I therefore point out the inadequacy of the evidence to support such defense.

The first account current of the trustee, referred to above, was filed April 21, 1942. The objections filed by the Louise Markham executor set forth the bequest to Louise Markham of $100 per month during her life, quoted the provision of the will that "all of the above bequests are payable as soon after my death as funds are available," and alleged a deficiency of $1,420 in payments which became due in 1933-1936 and that funds were on hand to pay the deficiency. The trustee's answer admitted the deficiency, alleged that the net income had been insufficient to pay more than had been paid, set out the first paragraph of the trust provisions of the will (as quoted in the main opinion herein), and alleged that *the principal had been depleted in a net amount of over $125,000*

*by payments that should have been made from income.* The account and the objections were heard before Florence M. Bischoff, court commissioner in probate, sitting as a judge pro tempore, who made an order which reads in part as follows: "[O]bjections having been presented, the Court, after hearing the evidence, overrules said objections, and findings being hereby waived, settles and approves said account in the manner following: [Order made settling the account and allowing trustee's fee.]" The trustee asserts that this order effected an interpretation of the will against payment from either corpus or subsequently earned net income, of the $1,420 deficiency. I hereby express no opinion concerning the issue as to the corpus; it may be assumed for the purposes of this discussion that the deficiencies are not payable from corpus and that the order made by the court commissioner as judge pro tempore so adjudicates. However, I am convinced that the described order did not adjudicate the question of right to payment of the deficiency from subsequently earned net income. Upon the record it is irrefragable that, as appellant contends, the trustee on that occasion claimed only that the principal had been depleted, *that annuities had been paid out of principal and had thereby been overpaid,* that there had been no net income in the current year, and that therefore no funds were then on hand from which the deficiency could properly be paid. It is to be noted in this connection that no evidence was taken except to prove the account and that the hearing was terminated when it became clear *that the trustee had no net income on hand.* These facts are established by the extrinsic evidence which was received (and properly so received in view of the fact that the record of the hearing preceding the described order did not disclose whether there had been a trial and decision of the same issues as here discussed) in the present proceeding.

Lieutenant Hahn, the attorney who represented the Louise Markham executor in the 1942 hearing, testified that prior to such hearing two applications had been made for payment of the same claim, and that they had been denied without prejudice. He stated further: "To the best of my recollection, the matter took place in Miss Bischoff's office, and I believe Miss Bischoff, Judge Palmer and Mr. Thompson and myself were present. I had filed my petition some time before, as is shown in the file and as Judge Palmer related, and I alleged that there was sufficient income available to pay these deficient annuities.

"Upon the examination of the account at that time by Miss Bischoff and by Judge Palmer and myself, it was determined that there was not any net income available, there was no net income——I shouldn't say available. There apparently was no net income, and I had no reason, no facts, no evidence of any kind to believe that that wasn't a very proper accounting.

"It is my recollection that Miss Bischoff therefore took the position that since under the terms of the will annuities were to be paid from net income, that there wasn't money available to pay these and therefore the question wasn't properly raised at that time. That is, in essence, my recollection of her ruling at that time.

"Q. Was that, as you recollect, the sole basis of the decision, Lieutenant?

"A. My recollection is that Judge Palmer mentioned other facts that were in his petition, which I do not recall if they were at this time, but that that was the basis, that was the way I understood the basis of the court's ruling.

"Q. Then, will you state whether or not you understood that this denial of your petition was a denial with or without prejudice?

"A. I took it certainly to be a denial without prejudice, because the merits of the matter, the legal issue of whether our clients were entitled to these delinquent annuities, had never been fully presented to the court, never been presented at all, to my knowledge.

"Q. Will you state whether or not that was the basis and reason for a waiver by you, if there was such a waiver, of written findings? The order recites findings were waived.

"A. I think that must have been why I waived findings at that time.

"Q. May I ask you, if it had been in your understanding a final and conclusive determination on the merits, would you have waived findings?

"A. No, I would not have."

Miss Bischoff testified: ". . . It wasn't a very long hearing, as I remember it.

"When Lieut. Hahn spoke to me, asked me if I remembered it, and I looked at my notes before I knew that there had been an order, I had an idea there had been a stipulation and the order was made by stipulation; that was my first recollection, but of course my notes didn't show that. I looked it up, and I had written down just 'Objections overruled and account

settled'; and I have no further recollection than that, except that I know it was a short hearing and there were no briefs presented to me, as far as I know, and I didn't look up any law, because I made the decision right there.

"Q. BY THE COURT: What was the nature of the hearing, Miss Bischoff?

"A. It was on the hearing of the account; and the objections to the account at the time, as I remember it, were mostly due to the fact that there were no funds available, which there were not, and I think it was practically conceded at the time, and that is the reason I thought it was a stipulated judgment, a stipulated order; but I don't remember, there may have been testimony or law quoted with regard to the matter of the statute of limitations, but I have no recollecion of that at all, not at all, and I didn't have any on my little notes. I had destroyed my large notes and only had my little notebook, and it said nothing whatever about that or about any of the testimony that was taken; and, as I said, there have been so many things since then, I am very sorry that I can't recollect anything more than that, except it was a short hearing in the little room.

"Q. BY MR. BARTLETT [attorney for appellant]: May I ask, Miss Bischoff, if there was any practice or custom on your part, when sitting as judge in those matters where there was a decision on the merits, to make a notation of that fact in the order?

"A. I usually did, I usually did on my own.

"Q. BY THE COURT: Notes?

"A. Notes.

"Q. BY MR. BARTLETT: From the absence of that notation in this order, would that suggest anything to you with reference to the merits?

"A. Of course, we all slip. I couldn't say, because while it is my custom—was always my custom to make notes, probably fuller notes than some of the others did, that may have been a day when I did not. I can't say definitely, because I don't recollect it.

"MR. BARTLETT: Cross examine.

"EXAMINATION BY THE COURT: (Q.) In other words, when the matter came before you, Miss Bischoff, it was on a hearing on whether or not you should approve the account?

"A. Yes.

"Q. And certain objections had been filed to that account?

"A. Yes; precisely.

"Q. You approved the account and overruled the objections?

"A. That is all I did. My notes show that.

"Q. Other than that——

"A. I don't remember anything. The only thing I can say is that if there had been any legal points involved, I wouldn't have made my decision, I know that, I wouldn't have made my decision right then and there, because I always read the law, I always took it under submission and read the cases and looked into it. I would never have made a decision without looking up and reading the cases; that has always been my custom, I am quite certain I would have done that. But I can't say that there was nothing said about it, because I don't know, I don't remember it."

In addition it was stipulated in the present proceeding that at the 1942 hearing described above the trustee gave an oral history of the administration of the estate by the executrix and the trustee, and stated that Louise Markham had not been paid in full because there had been insufficient net income during the periods the deficiency had accrued and that the trustee contended that during part of the time when the annuities were paid in full they were so paid in violation of the provision of the will that they should be paid from net income.

Thus the extrinsic evidence establishes clearly that at the 1942 hearing the court was not required to, and did not, decide whether or not the deficiency should be paid out of future net income, but determined only that the account correctly reported the receipts and disbursements of the estate and the property remaining in the trustee's hands and that the trustee had properly performed his reported acts. The claim of the Louise Markham executor was overruled because it was represented that the estate had on hand no net income from which to pay the claim. Consequently, since the issue now presented was not decided upon the merits at the 1942 hearing, the order made at that time does not render such issue res judicata in the present proceeding. As observed by Mr. Justice Carter, speaking for the court in *Stark* v. *Coker* (1942), 20 Cal.2d 839, 843 [129 P.2d 390], "when it affirmatively appears that an issue was not determined by the judgment, it obviously is not res judicata upon that issue. A judgment is not an adjudication as to matters which the court expressly refrains from determining." (See, also, *Goddard* v. *Security Title Ins. & Guar. Co.* (1939), 14 Cal.2d 47, 52 [92 P.2d 804]; *Security*

*T. & S. Bank* v. *Southern Pacific R.R. Co.* (1931), 214 Cal. 81, 87 [3 P.2d 1015]; *Campanella* v. *Campanella* (1928), 204 Cal. 515, 520-521 [269 P. 433].)

The court in this proceeding determined also that the orders settling the accounts made by the executrix in the years when the deficiencies accrued constituted judgments which fully adjudicated the issue as to future payment of such deficiencies. Such determination is contrary to the evidence. The accounts usually stated that the net income had permitted that only a part of the annuities be paid during the current year and asked credit for such payments as had been made. In no case was it alleged that such part payments constituted payment in full under the terms of the will for the respective years. Some of the orders approving the accounts did not refer specifically to the annuities paid; orders that did refer to such annuities simply approved the reported payments. In no instance was the court requested to decide, nor did it decide, nor could it upon the issues before it properly have decided, the issue now under discussion, i. e., whether the deficiencies were payable from future net income. Moreover, the answer to the petition for an order directing the trustee to pay accrued annuities states in part as follows: "admits that during the administration of said estate and before final distribution had been made, a deficiency of $1,420.00 in the payments of the annuities had occurred, but alleges that said deficiency was caused by insufficiency of net income to make the full amount of said payments as they became due." Furthermore, the trustee did not object to payment in full of the annuities in periods during which, he now asserts, it was necessary to resort to corpus in order to make such payments, and no issue as to interpretation of the will was presented or decided. If we should apply to the orders (now final) approving accounts showing payments of the annuities in part out of corpus the res judicata effect as to construction of the will which the trustee now asks us to apply to the 1942 order we should have to hold that such orders rendered res judicata a construction of the will that the annuities were properly payable from corpus when the net income was insufficient.

It seems to me, from the entire record, to be established that the court did not adjudicate on the settlement of the first, or any other, account current, that the executrix or the trustee should be discharged from liability in futuro for the payment out of future net income of any arrearages due on the Louise Markham annuity. The settlement of the accounts was ob-

viously an approval of the trustee's bookkeeping and reported transactions, not a construction of the will. The approval of expenses paid and mathematical determination that net income for the accounting period was inadequate to pay accruing annuities in full should not be enlarged into a determination that net income of the future should not be applied to payment of past due annuities. In my opinion the orders settling the accounts in question are not a bar to the present proceeding.

For adequate discussion of other issues raised reference is made to the opinion of Mr. Justice Shinn, speaking for the District Court of Appeal, reported in 158 P.2d 62.

The judgment should be reversed.

Spence, J., concurred.