## No. 11,421.

### MULCAHY *v.* JOHNSON, ET AL.

Decided January 24, 1927.

Action for accounting and construction of a will. Will construed and accounting denied.

### *Reversed.*

1. EXECUTORS AND ADMINISTRATORS—*Period of Administration.* Under the laws of Colorado, administration of an estate may not be closed until after the period of one year from the date of letters.

2. WILLS—*Construction—Life Tenant—Remainder-man.* In all doubtful cases, the interests of life tenants are to be preferred to the interests of the remainder-men.

3. *Life Estate—Rents and Profits.* The general rule as to when rents and profits begin to run as between life beneficiaries of a testamentary trust estate and the remainder-men, is that unless otherwise provided in the will itself, they begin to run from the death of the testator, although they may not be payable until after administration of the estate is closed.

4. *Distribution—Trust Estate.* Under a will giving a life interest to certain beneficiaries with remainder in trust, it is held that the trial court was in error in upholding the action of the trustees in paying debts, legacies, taxes, and costs of administration out of both principal and accruing income, the net income belonging to the life beneficiaries.

5. *Construction.* If it is impossible to give a rational construction to the words of a will as they stand, words and limitations may be transposed, supplied, rejected or changed, but it is not the province of the court to ignore unambiguous language and construct a will for the testator.

6.      *Lapsed Legacies.* Where a will directed that $3,500 be used for the construction of a chapel-vault, which direction was impossible of execution, it is held that this was not a lapsed legacy, and under the terms of the will should be included in the trust estate created by its provisions and did not go to the residuary legatees.

7.      *Taxes and Expenses—Payment—Court Supervision.* Under a will giving a life tenancy and creating a trust estate, ordinary taxes and expenses of administration are to be paid from the income of the estate, the payment of other expenses and disbursements to be determined by the trustees, if they are in accord, or if not, such matters should be submitted to the court for instructions.

8.      *Estates—Trusts—Court Supervision.* Courts are not required to give general advice or instructions upon matters which have not arisen in the administration of trusts or estates at the time their jurisdiction is invoked, even though the parties join in a request therefor. The court itself must determine the propriety of the action and refuse to answer speculative inquiries.

9.      COURTS—*Powers—Wills and Trusts.* The declaratory judgment act (S. L. '23, 268), confers no new authority concerning wills and trusts. District courts had full and complete jurisdiction before the passage of that act to construe wills and trusts and to control executors and trustees in the administration of estates.

10.     TRUSTS—*Administration—Expenses.* Provision of a court decree that interest on money borrowed for general expenses of the estate is payable out of the general income, approved; but a further provision that interest on borrowed money to meet emergencies is payable therefrom, without specifying the nature of the emergencies, held erroneous.

11.     *Expenses—Improvements.* The question of whether the expense of repairs, maintenance, improvements, betterments and additions should be paid out of capital or income, held properly left to the judgment of the trustees, if they agree upon the same. If they cannot agree, or the beneficiaries are dissatisfied such matters may be submitted to the court for instructions.

12.     *Trustees—Powers—Courts.* While the modern tendency of courts is not to interfere with the exercise of discretionary powers vested in trustees, this does not prevent them from exercising the powers of a chancellor upon the complaint of an aggrieved party, to determine whether or not there has been an abuse or perversion by the trustees of their discretionary powers.

13.     *Court Decree.* In an action to construe a will, a provision in the court decree that if the trustees act in concert, courts have no power to review the discretion vested in them by the will, held erroneous.

*Error to the District Court of the City and County of Denver, Hon. George F. Dunklee, Judge.*

Messrs. LEWIS & GRANT, Mr. ROBERT L. STEARNS, for plaintiff in error.

Mr. JOHN H. REDDIN, for defendants in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

EDWARD L. Johnson, a long-time resident of Colorado, a bachelor, an able, careful lawyer and successful business man, made a will and two codicils which were admitted to probate in the county court of the City and County of Denver, September 2, 1919. The codicils are not important here. By the will a testamentary trust estate, consisting almost entirely of real estate and amounting to several hundred thousands of dollars, was created and four trustees were appointed to manage it, and they were required to pay the net income therefrom to ten designated life beneficiaries and their descendants, with remainder over to the descendants of the life beneficiaries, to take effect upon the expiration of twenty-one years from the death of the last survivor of the original income beneficiaries, estimated to be about sixty years from the time of the testator's death. Edith Johnson Mulcahy, plaintiff in error, plaintiff below, and one of the life income beneficiaries, brought this action against the four trustees for an accounting and for a construction of certain clauses of the will and joined as co-defendants the other income beneficiaries and the living remainder-men. The trustees answered denying the plaintiff's right to an accounting and also prayed for a construction of the will in line with their contentions.

The remainder-men, who were minors, appeared by their guardian ad litem and by cross-complaint joined in the prayer for judicial construction. The trial court construed the will, issued detailed instructions to the trustees and denied the accounting asked for by the plaintiff, who is here with this writ of error. Although the minor defendants objected to certain parts of the decree, they have not assigned error here or filed a brief. The controversy upon this review is practically between the plaintiff life beneficiary and the trustees of the will. The suit, though not entirely a friendly one, is carried on by all the parties in good faith and with a view to obtain from the court a construction of the will as early as possible in the administration of the trust estate. This spirit of fairness has been communicated to learned counsel for both parties, as evidenced by their able briefs. The trustees themselves are not in entire agreement as to the meaning of the will or as to their powers and duties as trustees. The testator, Mr. Johnson, drew the will himself. It is remarkably free from ambiguities and only one of its nine clauses, which will be mentioned later in the course of the opinion, is inoperative and that is so, not because of ambiguity but because it proved to be impossible of performance. The trust estate is created by article third of the will. Except as disposed of by some other article, all of the testator's property, the residuary estate, is given to the named four trustees, children of his two deceased brothers James and Frederick, in trust "to pay the net income thereof and upon the expiration of said term (when the remainder takes effect) to distribute the principal thereof as hereinafter specified to the said children of my said brothers and to their descendants, that is to say: the said net income shall be divided quarter yearly, or at such intervals as may from time to time prove most convenient, equally among said beneficiaries."

The most important question for decision is the proper construction of the language above quoted. The testator died June 16, 1919. The will was probated and the

executors qualified November 4th of the same year. They made final report and accounting as executors February 1, 1921, having theretofore, under order of the probate court, made distribution of the trust estate to themselves as trustees. The probate proceedings thus covered about twenty months before the trustees assumed their duties. Under our laws administration of an estate may not be closed until after the period of one year from date of letters of administration. The plaintiff's contention is that though the income of the estate is not due or payable until after this period of one year, it begins to run, or accrues, from the date of the death of the testator. The trustees' contention is that the income did not begin to run until the end of the twenty months' period, February 1, 1921, when the trust estate was turned over to the trustees.

1. It is well at the outset to state that the trustees say that the general scheme of the will is to accumulate a large estate for future generations, while the plaintiff contends that the primary object and intention was payment of income to the life beneficiaries so long as they live. Not only from the will itself but from the testimony of one of the defendant trustees, it is more than apparent that while testator had sisters and cousins who share in his gifts, it was these minor children of his deceased brothers James and Frederick who were the special objects of his love and tender care and solicitude. He made them the residuary devisees and legatees of his trust estate. He was the guardian of the minor children of one of these brothers. The testimony is that his relation to them was as nearly like the relation of parent and child as it could possibly be. Though these children, from the estates of their respective parents, were well provided for financially and were not dependent upon the testator's bounty, still the same universal sentiment that rational and normal men and women have for the comfort and welfare of their own children—which is paramount and different in degree, at least, from that relating to remote

descendants—actuated the testator in the disposition which he evidently intended to make of his property. The testator knew the financial condition of these children of his brothers, and while it was not essential to their happiness, realizing, as a successful business man, the uncertainties and changes in fortune that might come to them in the later period of their lives, he made provision for, and directed his trustees to distribute to, them the net income of his estate during their natural lives. We find nothing in this will, or in the evidence before us, that is to be taken as an indication or intimation of an intent of the testator to accumulate his estate for a second or third generation of his brothers' unborn descendants but, on the contrary, the entire will, in view of testator's relation to these children, convinces us that his paramount desire was to provide that the entire net income of his trust estate should be enjoyed by these life beneficiaries whose relation to him was so nearly like that existing between parents and their immediate offspring. In all doubtful cases the interests of life tenants are to be preferred to the interests of the remainder-men. The general rule as to the time when rents and profits or income begin to run, as between life beneficiaries of a testamentary trust estate and the remainder-men is that, unless otherwise provided in the will itself, they begin to run from the death of the testator, although they may not be payable until after administration of the estate is closed. The trustees seek to evade this general rule by the language of the will above quoted to the effect that the duty of paying the income is imposed upon the trustees who do not begin to act until administration is closed and the trust estate turned over to them by the executors. This is clearly a misapprehension and the argument in its support is unsubstantial. When it is considered that the amount of the trust estate cannot be determined until after the administration is closed, it is only natural that the testator, a lawyer, acquainted with probate procedure in such cases

in the state where he lived, designated the trustees as the ones to pay the income, for in the ordinary course of administration the trust estate would be turned over by the executors to themselves, as trustees, soon after the amount of the trust estate was ascertained. This circumstance in no wise militates against the general rule that income from rents and profits begins to run from the death of the testator. The further fact that the amount does not become due or payable until a later date, even after the administration is closed, does not change the general rule. Indeed, we might have summarily disposed of this contention by referring to one of our own decisions, *Davis v. Harbaugh,* 76 Colo. 73, 230 Pac. 103. We there held that where, as here, a legacy is of the residue of the testator's estate, or of some aliquot part thereof, in trust to pay the interest or turn over the income to the life tenant, remainder over at his death, unless otherwise provided in the will itself, the right of the life tenant to the rents, issues, profits or income begins from the death of the testator, though the amount thereof is to be computed later and the time of payment is to be fixed by the county court. There is no difference in principle between the Davis case and the one before us, and, as to this question, rents, profits and income are equivalent terms. This rule has been the law in England and this country for many years. The following, among other cases, support our conclusion: *Angerstein v. Martin,* 1 Tur. & Rus. 231, 238, decided by Lord Eldon in 1823; *Lawrence v. Security Co.,* 56 Conn. 423, 15 Atl. 406, 1 L. R. A. 342; *Lovering v. Minot,* 9 Cush. (Mass.) 151. The opinion in the Minot case is by Chief Justice Shaw and this is generally regarded as a leading case. The learned chief justice, after stating the rule as to the beginning of rents, etc., thus summarizes his holding: "It is a question between the first cestui que trust for life, and the remainder-man. The effect of a different decision would be to apply the first year's income to increase the capital; to take it from the first taker, and

apply it to an accumulation for the benefit of the future taker.''

''It is contrary to the presumed intent of the testator, to narrow the benefit intended for the first object of his bounty, for the benefit of an object more remote.''

One of the recent cases is *Will of Leitsch,* 185 Wis. 257, 201 N. W. 284, 37 A. L. R. 547. The holding there, as stated in the syllabus, is: ''Income accruing from a trust estate intermediate the death of the testator and the vesting of the estate in the trustees belongs to the life tenant and not to the corpus of the estate, especially when no other disposition of such income is made by testator.'' This case is also noteworthy because it sets aside a previous decision by the same court made only a few years before. In the opinion are a number of authorities in line with our conclusion.

2. The other questions in the case relate to the construction by the trial court of various provisions of the will and are of importance in the administration of the trust estate. Article seventh of the will charges upon the trust estate created by article third: All of the testator's ''debts and liabilities, including the inheritance tax and other post-mortem charges, if any there shall be, so as to leave all other devises and bequests free and discharged from all liabilities and encumbrances.'' The defendant trustees, as executors of the estate during its administration in the county court, apparently proceeded upon the theory that, inasmuch as the testator did not expressly in his will or by necessary implication say that debts and liabilities, taxes and post-mortem charges should be payable out of the corpus of the trust estate in order to increase the income for the life beneficiaries, they, as executors, during the course of administration in the county court, might, as they did, pay all debts, legacies, taxes and costs of administration out of assets in their hands, whether principal or accrued income. The trial court upheld the trustees in this contention by denying to the plaintiff an accounting which

would require these items, or at least some of them, to be charged to corpus. Manifestly the decree in this particular is wrong. Of course, the gross income earned during the period of administration could not properly be distributed to the life beneficiaries. It was only the net income that they were entitled to. Certain deductions must be made from the gross income, like taxes on improved property, insurance, heat and light, ordinary repairs and maintenance and other like matters enumerated in plaintiff's brief. The amount of the net income resulting, after the deduction of costs of earning the money collected during the period of the executorship, is the sum of $15,594.60. This net income was earned by the executors during administration and up to the time they distributed the trust estate to themselves as trustees. The decree of the court in this particular was wrong and it is necessarily so as the result of our conclusion upon the time when the income begins to run. This net income belongs to the life beneficiaries and should be paid over to them. The trustees say that the amount of this fund is held by them and they are able to distribute it to the life beneficiaries.

3. Article sixth of the will reads: "Toward the erection of a chapel-vault on our lot on the hill in Calvary Cemetery in or near Milwaukee, for which I received a deed from Father Schinner, Vicar General, in the Autumn of 1904, I give (three thousand five hundred dollars or) lots thirty-one to thirty-nine (31-32-33-34-35-36-37-38-39) in said block One (1) Bellevue West, leaving it to my executors to choose the lots or the money, and hoping they will choose the lots if they can readily be sold for a greater sum; and I trust that what more may be needed to build the chapel-vault will be supplied by the other members of our family and that it may be built without farther delay; and until it shall be built I wish to be with my parents and brothers and sisters in our old lot in the same cemetery."

The county court, while probate proceedings were pending, held that this article was impossible of execution and the executors were relieved from all responsibility thereunder. The parties concede this impossibility, if for no other reason because the owners or controllers of the cemetery would not permit the erection therein. Assuming, therefore, with the parties themselves that this article cannot be carried out as directed, the question is, what becomes of the $3,500 which the testator intended should be used for the erection of the chapel-vault? The plaintiff says that this money was never segregated from the trust estate, and that it remains as a part thereof as created by article third of the will. The defendants say that here is a case of a lapsed legacy and, as such, the sum of $3,500 becomes the absolute property of the residuary devisees and legatees because article fifth so directs. Let us see if this was a lapsed legacy. In *Fite v. Beasley,* 12 Lea (Tenn.) 328, 330, the court said that a direction to executors by will to erect a monument at the testator's own grave is not a legacy, but is to be considered as a part of the decedent's funeral expenses. In *Fairman's Appeal,* 30 Conn. 205, it was said that the erection of a suitable headstone at the decedent's own grave may properly be considered as a part of his funeral expenses. See also *Wood v. Vandenburgh,* 6 Paige Ch. (N. Y.) 277. Article sixth of the will does not name any legatee of the $3,500, or any devisee of the lots. It is not a case of a lapsed legacy or devise. The trustees say that obviously the testator intended, though he did not use the word "devise" or "bequeath," to give direction to the executors to carry out his purpose of having a chapel-vault. If it is impossible to give a rational construction to the words of a will as they stand, words and limitations may be transposed, supplied, rejected, or changed. Woerner on Administration, Vol. 3, p. 1380, sec. 417. But where there is no ambiguity and the language employed in the will is consistent and understandable as it is written, it is not the province of

the court to ignore the unambiguous language and construct a will for the testator. The argument of the trustees is that while the testator in article fifth used the technical words: "if any devise fail," he inadvertently omitted the word "direction" or some word of similar meaning and, therefore, it is the duty of this court to see that this intention of the testator is carried out. We do not think so.

The trustees, moreover, say that, since the will in article fifth specifies that if any devise "fail of effect from whatsoever cause," it should go, not to the trust created by article third, but to his residuary devisees, we should construe this article sixth relating to a chapel-vault as a lapsed legacy and order it turned over to the residuary legatees. We do not think we can make for the testator a will which he evidently did not make for himself. The testator was a learned lawyer and knew the meaning of "devise." It is only in case of a lapsed legacy or a devise that he intended that provision therefor should go to his residuary legatees. Since by article third he expressly provides that the trust estate shall consist of all of his property, except that which was otherwise devised by the will itself, and since this particular $3,500 has not been otherwise devised, or at all, it would seem necessarily to fall in and become, or rather remain, a part of the trust estate itself. As the life beneficiaries are the same persons as the residuary legatees the construction of this clause does not seem to be of much importance, unless it be that if the $3,500 goes to the life beneficiaries as their absolute property, a portion of it will be enjoyed by one of the life tenants to a greater extent than if the same is held to be a part of the trust estate.

4. In one clause of the decree the court declared that the general taxes on vacant, unimproved and unproductive real estate are payable out of the general income. The plaintiff concedes that ordinary taxes on productive real estate are to be paid by the life tenant because the property is employed to earn the income and taxes con-

stitute part of the cost of earning. She objects to that part of the decree which charges to income ordinary taxes upon vacant and unproductive property. The court also decreed that local improvement taxes assessed against unimproved and unproductive real estate are payable out of the general income, and that local improvement taxes assessed against improved and productive real estate for a benefit which in the sound discretion of the trustees is likely to outlast the probable life of the trust estate should be ratably apportioned between income and corpus, according to the estimated benefit likely to be received by each estate, and that such assessments for a benefit which is likely to be entirely consumed during the probable life of the trust estate are chargeable to income. The decisions of the different states are not uniform as to all the matters covered by this part of the decree. In 21 C. J. p. 955, et seq. will be found a general discussion of the question now before us. In Perry on Trusts and Trustees, (6th Ed.) Vol. 2, p. 916, sec. 554, note, it is said that taxes upon unimproved property which produces no income should be paid out of the corpus of the estate. In *Spencer v. Spencer,* 219 N. Y. 459, 114 N. E. 849, Ann. Cas. 1918E, 943; *Patterson v. Johnson,* 113 Ill. 559; and *In re Martens' Estate,* 39 N. Y. Supp. 189, there was an indication, if not a decision, that during the period of unproductivity the life tenant was not bound to pay taxes out of the income. In some other cases such as *Martin v. Kimball,* 86 N. J. Eq. 10, 96 Atl. 565; *In re Morton's Case,* 74 N. J. Eq. 797, 70 Atl. 680, where the property consists in part of unimproved property, producing no revenue, the life tenant was required to pay taxes on the unimproved property from the income derived by him from the revenue producing properties so far as such income extends. We think the authorities generally are that it is not safe or good practice by general directions or instructions in advance, for a court of equity to designate generally in what cases taxes and assessments shall be paid or apportioned, aside from the ordinary taxes

and the ordinary expenses of the administration, which all authorities say the life tenant must pay; but the safer rule is to wait until the concrete question arises and becomes important and decision thereon becomes necessary. After the trustees have exercised, as to such arisen question, their best judgment, and if they are unable to agree—and in Colorado all the trustees must unite in order to make a decision in such cases—or, if in case of agreement, a life tenant is dissatisfied, then trustees, in the first instance, and the life tenant in the second, may ask, from time to time, and whenever it becomes necessary, for instructions of the court to fit the particular cases as they may arise during the administration of the trust estate. We, therefore, say that the court erred in issuing its general abstract instructions, as to these controverted questions in advance of any necessity therefor. Our conclusion that it was premature for the district court to issue instructions in this proceeding as to matters that might never arise in the administration of the trust is not at all affected by, or inconsistent with, the provisions of our Declaratory Judgment Act, Session Laws 1923, p. 268. This act, among other things, provides that any designated person interested in the administration of a trust may have a judicial declaration of his rights or legal relations thereto determined as to any question *arising* in the administration of the trust, including questions of construction of wills and other writings, and to direct trustees to do or abstain from doing any particular act in their fiduciary capacity. We think our district courts, being constitutional courts of original jurisdiction of "all causes both at law and in equity," had as full and complete jurisdiction and power before, as after, the passage of this act to construe wills and trusts and to control executors and trustees in the administration of estates. It will be observed that the act itself authorizes the determination only of questions "arising" in the administration of an estate or trust. In this opinion we have at the request of the parties de-

termined all questions that have properly arisen, but we decline to determine those which have not yet arisen and which may never arise during the administration of the trust. Neither under the equity practice nor under this act are the courts required to give general advice and instructions upon matters which have not arisen at the time their jurisdiction is invoked. It is only fair to the trial court to say that all the parties here joined in a request for a construction, but that circumstance is not controlling. The court itself must determine for itself the propriety of such action, and should refuse to answer speculative inquiries.

5. The court decreed that interest on money borrowed for general expenses of the estate, *or to meet emergencies,* is payable out of general income. The first part of this decree as to general expenses is right, and the plaintiff does not complain of it. She objects, however, to the provision that interest on money borrowed "to meet emergencies," without specifying the nature and character of the emergencies, is wrong. We think the criticism is right and the phrase "or to meet emergencies" should be eliminated. When emergencies arise, and it becomes necessary to borrow money to meet them, the trustees, if they are in doubt about the matter, may apply to the court for instructions in the premises.

The court in another clause of the decree instructed the trustees as to the method of charging the cost of repairs, maintenance and renewals and all improvements, betterments and additions. The court said, as to all of them, that the amount and cost of construction and reconstruction of improvements on real estate, and money borrowed for such purpose, and whether the same or a part thereof, should be payable out of capital or income, are left to the judgment of the trustees acting in good faith, under the circumstances of each particular case, having in view the preservation of the principal of the trust estate for the remainder-men, and the right of the life beneficiaries to the net income, and in view of the power,

authority, judgment, choice and discretion given to the
trustees by the will; and in case of disagreement they
may apply to the court for further instructions. The
specific objection by the plaintiff is that by this decree
the court leaves the matter of charging these items en-
tirely to the judgment of the trustees. From what we
have already said about taxes and assessments, we think
it follows that the court did not err in leaving all these
matters to the trustees *in the first instance,* if they can
agree upon the same, and the instructions must be so
interpreted. The contention of the plaintiff that cost of
repairs, maintenance and renewals comes out of income,
and cost of improvements, betterments and additions is
chargeable to corpus may be true as a general statement,
but we think it a wiser and safer thing to permit or
instruct the trustees, in the first instance, if they can
agree upon these matters, to do so, but if they cannot, or
if the life tenants are dissatisfied they, or any of them,
may apply to the court for the proper relief. What we
have already said as to the taxes and assessments ap-
plies as well to repairs, maintenance, improvements, bet-
terments and additions.

6. Article fourth of the will relates to the powers
given to the trustees by the testator. It is unnecessary
to specify them. They are as comprehensive and as un-
limited as a testator could possibly confer. The article,
after enumerating many powers, concludes by saying:
"and that I may finally resume my will on this subject,
if any enumeration of powers be incomplete I desire it to
be completed and construed by the aid of this general
clause, that I give to my executors and trustees the same
freedom to use their own judgment, choice and discretion,
and the same unrestricted power to carry out their in-
tentions which a man has in handling his own." One of
the paragraphs of the decree of the court reads: "That
all expenses and outlay incurred by the trustees, acting
in good faith and using their best judgment and discre-
tion in the conduct and management of the trust estate,

are payable out of the general income, and their judgment and discretion in such matter is final and not subject to attack or review in view of the large powers and discretion vested in them by the will.'' In another clause of the decree already referred to, as to cost of construction and improvements of real estate, etc., the court says in effect that the judgment of the trustees acting in good faith, under the circumstances of each particular case, if unanimous, is attended by like finality, but in case of disagreement they may apply to the court for further instructions. Taking these two clauses of the decree together, though on first blush inconsistent, it would seem to be the trial court's view that it is only when the trustees disagree that the court can exercise supervisory power, whereas, if trustees act in concert, and they can only act by the consent of all, courts have no power to review the discretion vested in them by the will. Unquestionably the testator intended to give to his trustees in the management of the trust estate the largest and fullest powers which one may confer by deed or will. The modern tendency of the courts is not to interfere with the exercise of such discretionary power. This, however, does not prevent the courts from exercising the powers of a chancellor, upon the complaint of an aggrieved party, to determine whether or not there has been an abuse or perversion by the trustees of their discretionary power. The right of an aggrieved party to apply to the courts for relief cannot be divested however sweeping may be the powers which have been conferred upon trustees. The late somewhat celebrated case of *Gould v. Gould,* 126 Misc. N. Y. 54; also 213 N. Y. Supp. 286, contains a discussion on this point by the learned referee O'Gorman. To allow arbitrary discretion, uncontrolled by the courts, is not the will of the testator and cannot be written into the will by the court's decree. For example, the executors here—and the trustees propose to pursue a similar course—use net income to pay debts and liabilities, although the positive direction of the testator was to pay

the net income to the life beneficiaries. No argument is needed to show that this is radically wrong. They had no discretion to exercise; their duty was to pay net income to life tenants; not to withhold it or to accumulate it for remainder-men. Beneficiaries have the right to invoke the jurisdiction of courts in cases like the present. Indeed, the trustees themselves, in this very case, have joined with the plaintiff in asking for the instructions of the court as to their powers and duties in administering the trust. The trustees are not agreed among themselves as to the extent and nature of their powers and in this very proceeding have asked the court to point out to them specifically, in various instances, just what powers they have as trustees.

We shall not attempt to prepare a decree to be entered by the trial court in lieu of its original decree under review. We have indicated in a general way our views upon the questions raised and the parties themselves will doubtless join in preparing a new decree which must be substantially in accordance with the draft prepared and submitted by the plaintiff at the trial below. The decree of the court must be reversed and remanded and the decree reformed to correspond to the views expressed in this opinion. We may say, however, that the court must eliminate from its amended decree what is said in the decree now under review, as to the lack of power in the courts to review the judgment and discretion of the trustees. The decree, as amended, should include the clause retaining jurisdiction of the case, and permit parties from time to time to apply to the court for instructions, in proper cases as they arise, and for the review of decisions therein made by the trustees. Decree reversed and the cause remanded.