No. 15,581.

BURDEN *v.* COLORADO NATIONAL BANK, TRUSTEE ET AL.
(179 P. [2d] 267)

Decided March 24, 1947.

Mr. Ivor O. Wingren, Messrs. Dickerson, Morrissey & Zarlengo, Mr. C. E. Wampler, Mr. Erskine R. Myer, Mr. John R. Coen, for plaintiff in error.

Messrs. Bancroft, Blood & Laws, Messrs. Grant, Shafroth &. Toll, Mr. Max P. Zall, for defendants in error.

*In Department.*

Mr. Justice Jackson delivered the opinion of the court.

Plaintiff in error, who was plaintiff in the trial court, brought an action against the Colorado National Bank in its capacity as testamentary trustee under her father's will, praying that the trustee be required to carry out the terms of an agreement which she, as life tenant under the trust, had executed with her three children as remaindermen, and further, that the trustee be required to account to her for 1508½ shares of Standard Oil Company of Indiana stock and 373 shares of the

Colorado National Bank common stock, or the proceeds thereof. Following a trial to the court judgment was entered for defendant, and plaintiff here seeks reversal of that judgment.

The facts are not in dispute, and most of them are stipulated. We are actually concerned with an interpretation of some of the provisions of the will of one Dennis Sheedy. The execution of his will, his death, and the admission of his will to probate all occurred during the year 1923. That portion of his will with which we are concerned pertains to the two equal trusts, with similar provisions, created for his two daughters out of the residuum of his estate—in one of which Marie Sheedy Livingston is named as the life tenant and her children are the remaindermen, and in the other Florence Sheedy Burden, the plaintiff in this case, is named as the life tenant and her three children are remaindermen.

In 1929 the Standard Oil Company of Indiana declared a fifty per cent stock dividend, and the trustee under the Burden trust received 1508½ shares on its holding of 3017 shares of that stock. The trustee set up on its records these additional shares of stock as an asset in the principal account, allocating them to principal or corpus of the trust. The cash dividends that subsequently resulted from holding the additional shares, with all other cash dividends, it paid over to the life tenant, Mrs. Burden. We quote paragraph 8 of the stipulation, dated June 24, 1943, to describe what happened thereafter: "That at or immediately following the receipt of the said Standard Oil Company of Indiana stock dividend on March 21, 1929, the Trustee, pursuant to the 34th paragraph of the will of Dennis Sheedy, examined and considered the question of whether it was income or principal, consulted attorneys, and decided and determined, in a bona fide exercise of such discretion, power and authority, as it had under said will, that the said property so received by it was principal; that

shortly thereafter the plaintiff claimed and asserted that the Trustee should have decided and determined that the said stock dividend was income and should reverse its said decision; but the Trustee in good faith believed that its said decision was right and proper and that it could not, and therefore did not, reverse the same, and has always adhered thereto. That thereafter in the month of June, 1934, and again in the early part of the year 1941, the plaintiff, represented by counsel in each instance, again requested and urged the Trustee to reverse its said decision and determination; that in each instance the Trustee, pursuant to the 26th paragraph of the said will, employed counsel to brief said question and give it a written opinion thereon; that counsel did so, and the Trustee, in each instance, acting upon the opinion of counsel, in good faith, refused to reverse its said former decision and determination, or to disturb any rights that may have become established thereby."

The trustee disclaimed knowledge as to whether the stock dividend represented, in whole or in part, surplus earnings accrued during the existence of the trust or prior thereto, and made its decision in the honest belief that it should so decide irrespective of when the surplus earnings accrued.

In 1941 the Colorado National Bank reduced the par value of its shares from one hundred dollars to fifty dollars per share and simultaneously declared a fifty per cent stock dividend. The trustee's original holding in the Burden trust of 373 shares of Colorado National Bank stock of the par value of one hundred dollars per share was therefore increased to 746 shares of a par value of fifty dollars per share, and then the trustee received 373 shares additional representing the fifty per cent stock dividend. The trustee took the same position in regard to this stock dividend as it did with respect to the Standard Oil Company of Indiana stock dividend, and allocated the stock and the subsequent proceeds of sale thereof to the corpus or principal of the trust. Mrs.

Burden again protested and objected to this action by the trustee, and demanded the stock dividend or the proceeds from the sale thereof, but her demands were again refused.

August 8, 1941, Mrs. Burden, as life tenant, and her three children, as remaindermen under the trust, entered into a contract in which it was agreed that the two stock dividends of the Standard Oil Company of Indiana and the Colorado National Bank should be treated as income and not as principal and be paid to Mrs. Burden, the life tenant—she agreeing "to pay all taxes, if any, resulting by reason of this agreement and to save first parties and each of them harmless from any tax liability occasioned hereby." A copy of this agreement was delivered to the trustee, together with a formal demand in behalf of Mrs. Burden that the bank presently turn over to the life tenant either the two stock dividends or the proceeds thereof. When the trustee refused to comply, this action was commenced.

The first point of law raised by plaintiff's specifications is that the contract entered into between Mrs. Burden, as life tenant, and her three children, as remaindermen, represents all of the vested interests in that trust; that it is binding upon the trustee and that the latter has no need to take account of other possible beneficiaries referred to as contingent remaindermen. The trustee contends that its duty is to protect the rights of all contingent beneficiaries, including those not yet in being.

The 29th paragraph of the will provides that, upon the termination of the life estate in favor of Mrs. Burden, the corpus of said trust "shall immediately be paid, delivered and transferred to the surviving issue of the said Florence Sheedy Burden, if any." There is then a provision that if Mrs. Burden shall die without issue, the property in the Burden trust shall become part of the Marie Sheedy Livingston trust, if Mrs. Livingston be living; and in case Mrs. Livingston shall also have

died, then the assets in the Burden trust shall become the property of the issue of Mrs. Livingston; and if she shall have died without issue her surviving, then the property in the Burden trust shall go to the nephews and nieces of the said Dennis Sheedy.

The 30th paragraph of the will contains a direction that where provision has been made for the passing of the properties of the trusts of testator's two daughters to the issue or surviving issue of them, "it is my will that in every such case the children of the said Marie Sheedy Livingston or Florence Sheedy Burden taking said properties under said provisions, shall take share and share alike, and that the children of any deceased child shall take the share that such deceased child would have taken if then living, and that no grandchild or remoter issue of the said Marie Sheedy Livingston or Florence Sheedy Burden shall take under said description of 'issue' or 'surviving issue' if such grandchild or remoter issue has a parent then living and entitled to take under said description."

Counsel for Mrs. Burden cite *Hignett v. Sherman,* 75 Colo. 64, 71, 224 Pac. 411; *Gregory v. Colorado National Bank,* 91 Colo. 172, 178, 13 P. (2d) 273; *Jones v. Pueblo Savings & Trust Co.,* 103 Colo. 455, 460, 87 P. (2d) 2, to support the thesis that each of the three children of Mrs. Burden, when they signed the agreement with her, had a vested estate or interest in the trust. That may be a true statement, but it is not a complete one; to it must be added the further statement that Mrs. Burden's children had an estate that was subject to being divested upon the happening of a condition subsequent. The condition in this case was the death of one or more of the life tenant's children prior to her own death. Upon such happening, there is a substitution of the child or children of Mrs. Burden's child so predeceasing her in the place of the deceased parent. The trial court took cognizance of this situation and, in response to the trustee's motion, appointed a special guardian ad litem to

represent those born and also those yet unborn who might have a future interest in this trust. We believe the court was right in so doing. Subsequent to the trial, an unfortunate event occurred which illustrates the wisdom of this action, as well as the application of the law on this point. It now appears that one of the three children of Mrs. Burden, Alvin Beresford Burden, after signing the above mentioned agreement with his mother in 1941, became a member of the armed forces of the United States and while so engaged was lost at sea in September 1942, leaving one child surviving, namely: Alvin Beresford Burden, Jr., a minor. Under the paragraphs of the will above described, this grandchild of Mrs. Burden, who had thus survived his father, immediately became substituted for his deceased father as a beneficiary under the trust. Up to the time of his father's death he had merely a contingent interest. After it, his interest became vested. He took no interest in this trust by virtue of being an heir of his father or devisee or legatee under his father's will, but solely by being a contingent beneficiary under the Dennis Sheedy will by means of an "executory devise," which, as we have noted in *Barnard v. Moore*, 71 Colo. 401, 207 Pac. 332, is the term given to a shifting use under a testamentary trust. But just as his father's interest, though vested, was subject to divesting or defeasance upon the happening of an event, so his own interest, though now vested, likewise is defeasible, and, in the event he should die prior to Mrs. Burden, his interest under the trust would again "shift" to the next set of beneficiaries as set forth in the 38th paragraph of the will of Dennis Sheedy.

■ This type of future interest is described and approved in more detail in *McArthur v. Scott,* 113 U.S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015, as well as in *Barnard v. Moore, supra.* To the authorities cited in those cases there might be added: *Conditional and Future Interests in Property,* by Edward F. Spitz, and Annotation in 131

A.L.R. beginning at page 712 on the distinction between contingent estates and estates vested, subject to defeasance. We also find that this conditional interest is recognized in *Restatement of the Law — Trusts,* section 84, where it is stated: "a. The mere fact that an interest is subject to a condition subsequent that on the happening of a certain event the interest shall terminate does not prevent its being held in trust."

■ As may be observed from the annotation on the subject of Termination of trust by consent of beneficiaries in 123 A.L.R., beginning at page 1427, and the annotation on the subject of Effect of premature termination of precedent estate to accelerate a contingent remainder in 164 A.L.R., beginning at page 1433, there appears to be no change in the more recent cases in recognizing the principle of future interests. The only change seems to be one of terminology. Under the later phrasing, the child of Alvin Beresford Burden would be said to have received a substitutional or substitutionary gift under the Dennis Sheedy will. *Thomsen v. Thomsen,* 164 A.L.R. 1426. In the annotation in 123 A.L.R. at page 1444, the author summarizes the holding in *Hills v. Travelers Bank & Trust Company,* 125 Conn. 640, 7 A. (2d) 652, as follows: "Where the distribution of the income under the trust instrument is limited to income during a period measured by a specified lifetime, and the present holders of a vested interest in the income or the principal may, through death during that period, be succeeded, by substitution under the terms of the instrument as distinguished from by inheritance, by issue yet unborn, there are contingent interests which are not presently determinable but which must not be disregarded, and the trust must continue so long as does the contingency." We believe, therefore, that the trial court decided correctly in approving the action of the trustee in resisting plaintiff's attempt to enforce her 1941 agreement with her three children.

■ Plaintiff further contends that the trustee vio-

lated its discretionary powers in allocating these stock dividends to the corpus of the trust, instead of paying them out in the form of income to the life tenant. Pertinent paragraphs of the will read as follows:

"34th: I give to my said trustee full power and authority to decide and determine what property or money received by it shall be income and what shall be principal, and my daughters shall be bound by its decision therein.

\* \* \*

"38th: It has been my purpose herein to grant to the said trustee full and complete power to act as hereinabove set forth, according to its discretion, and to do every act and to execute such instrument or instruments as may be necessary therefor; but I appreciate that it may not be possible at this time to designate fully what may be necessary or required in the future in order to enable the Trustee to carry out all the powers that I have intended hereby to grant. Now, therefore, I hereby declare that subject to conserving the estates according to its best judgment, and paying the net income arising therefrom to my respective daughters and their respective children as herein provided, and making payments to my grandchildren as hereinabove provided, I do hereby grant unto said trustee as full and complete power and authority in every respect as to said trust estates as I might or could exercise if I were living.

"39th: The said Trustee shall not be liable for any acts excepting those of wilful misconduct. \* \* \* "

Our impression is that the testator, realizing there might arise such a question as the one here involved as to whether a particular distribution to the trust estate should be treated as principal or income, definitely and clearly left the determination of this question in the discretion of the trustee, and no one else.

Under the terms of the will it not only is the trustee's right, but its duty, to act upon any such question that

may arise. The only question that could be raised in respect to any action it might take under paragraph 34th of the will would be as to whether, in so acting, it had abused the discretion the testator had conferred upon it. There would appear to be such an abuse if it should allocate the interest on bonds in the estate to principal, or if it should pay out as current income the proceeds received from the sale of a parcel of real estate held in the trust.

From the interesting and carefully prepared briefs that have been filed by counsel representing the parties, we note that the proper classification of stock dividends presents no such unequivocal answer as is indicated in the two preceding examples. In Kentucky there appears to be the fixed rule to treat all stock dividends as income. No other state seems to follow this doctrine.

In Pennsylvania the rule is that where the stock dividend represents surplus that has been accumulated during the life of the trust, then it should be treated as income—otherwise, as corpus. And there has been applied also the principle of apportionment in cases where some of the surplus of a corporation represented by a stock dividend has been accumulated prior to the setting up of the trust and the balance of it subsequent to the commencement of the trust. This rule seems to have been followed by the courts in numerous states. Mrs. Burden's counsel urged that it is particularly applicable in Colorado because of the position hitherto taken that, in questions between life tenants and remaindermen, the life tenants are to be preferred. *Mulcahy v. Johnson,* 80 Colo. 499, 252 Pac. 816. It also is urged that this rule has been followed in the Restatement of the Law — Trusts, section 236.

The Massachusetts courts have adopted the rule of treating stock dividends as corpus — a rule that has a large following not only by the courts of other states but also by legislatures of various jurisdictions. In some states where the Pennsylvania rule has been adopted

by the courts, legislatures, by enactment, have supplanted it with the Massachusetts rule.

The United States Supreme Court, both in respect to property questions involving life tenants and remaindermen arising in the District of Columbia (*Gibbons v. Mahon,* 136 U.S. 549) and in cases arising under the levying of federal taxes (*Towne v. Eisner,* 245 U.S. 418; *Eisner v. Macomber,* 252 U.S. 189, and *Helvering v. Griffiths,* 318 U.S. 371), has consistently followed the Massachusetts rule. Likewise, the Uniform Principal and Income Act, which has been adopted by the legislatures of some states, embodies the Massachusetts rule.

Counsel for Mrs. Burden argue that the Pennsylvania rule is the only equitable one and that the trustee, as a matter of law, should have applied the rule in this case.

The trial court held that the trustee acted within its powers in applying the Massachusetts rule.

In view of the presented record, it is not necessary that we enter into an extended discussion of the relative merits and disadvantages of the Pennsylvania and Massachusetts rules. Anything we might say, in this opinion, as to which rule should be adopted in this jurisdiction would be dicta, for we agree with the trial court that Dennis Sheedy, by the 34th paragraph of his will, definitely placed any decision on that question upon the shoulders of his trustee and not upon the courts.

It is the presence of this 34th paragraph in the Sheedy will that distinguishes this case from *Mulcahy v. Johnson, supra.* In the latter case the trustees under a testamentary trust were given no power to refrain from paying to the life tenants the income that had accrued during the period of administration but which could not be paid until the settlement of the estate.

Counsel for Mrs. Burden also raise a question as to the amount allowed in fees to counsel for the trustee and to Max Zall as guardian ad litem. On their theory of the case, the agreement between Mrs. Burden and her three children was binding upon the trustee, and the

trustee should have taken the position of a mere stakeholder and remained neutral instead of resisting Mrs. Burden's demands. In affirming the judgment of the trial court we likewise reject the theory advanced by her counsel. We believe the record justifies the allowances made by the trial court. The controversy extended over a considerable period of years and involved stock in the Burden trust of a value of approximately $80,000. From the record and briefs it appears that the Livingston trust also received stock dividends of like value. Inasmuch as we believe the trustee was justified in resisting the demands made upon it, we affirm the judgment of the trial court concerning attorneys' fees.

Although the question of laches was duly urged by defendants in error in the trial of the case, the court elected to base its decision on the more substantive issues involved. For that reason we do not discuss the defense of laches, even though it might have been determinative under other circumstances.

The judgment is affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE LUXFORD concur.