Helen L. SMITH, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 5240.

United States District Court
D. Colorado.

Dec. 30, 1957.

Yegge, Bates, Hall & Shulenburg, Mortimer Stone, Richard D. Hall, Denver, Colo., for plaintiff.

Donald E. Kelley, U. S. Atty., for the Dist. of Colorado, Vernon V. Ketring, Asst. U. S. Atty., Denver, Colo., Charles K. Rice, Asst. Atty. Gen., James P. Garland, Anthony T. Dealey, Attys., Dept. of Justice, Washington, D. C., for defendant.

KNOUS, Chief Judge.

This is an action brought pursuant to 28 U.S.C.A. § 1346 (as amended by Chapter 648, § 1, 68 Stat. 589, July 30, 1954), for the refund of federal estate taxes paid by plaintiff for the estate of her deceased husband, Charles G. Smith.

The case was tried before the Court upon an agreed stipulation of facts together with attached exhibits, and brief testimony taken in Court.

Charles G. Smith, husband of plaintiff, died September 29, 1951, leaving a last will and testament dated July 30, 1948, which was admitted to probate November 26, 1951, by the County Court of the City and County of Denver, State of Colorado. Also on November 26, plaintiff Helen L. Smith and Carrol D. Sack were duly appointed co-executors and letters testamentary issued to that effect.

In December, 1952, the co-executors filed a Federal Estate Tax Return (F-706) and paid an estate tax amounting to $23,448.12.

Notified of a tax deficiency on testator's estate, plaintiff paid $45,000 on March 24, 1955, with her own funds. A statement of estate taxes due from said estate was issued April 20, 1955, crediting earlier payments and assessing an additional deficiency of $7,660.54 ($1,443.20 principal and $6,217.34 interest). This latter amount was paid by plaintiff May 2, 1955. A claim for refund filed by plaintiff on June 20, 1955 for $45,808.13 ($40,402.31 principal and $5,405.82 interest), and for interest on said amount, was later disallowed.

As the basis for the tax deficiency imposed the Government classified all assets received by plaintiff through (1) Article VIII of testator's will within the "terminable interest" category of 26 U.S.C.A. § 812(e) (1) (B) and (D) I.R.C. 1939; and, therefore, not deductible as a marital deduction, and (2) placed certain "interest income" certificates described later in the opinion, within the "reversionary interest" category of 26 U.S.C.A. § 811(c) (1) (B); and, therefore, included in testator's gross estate.

The case thus presents two distinct questions for resolution.

The first controversy centers on Article VIII of the will, which reads as follows:

"I devise and bequeath unto my wife, Helen L. Smith, all the rest,

residue and remainder of my estate of whatsoever character and wheresoever located, including all lapsed legacies and devises, to be her absolute property.

"In the event that my said wife should predecease me or, surviving me, die before distribution to her of the bequest herein provided for her, then and in that event I direct that the bequest to her shall lapse and become a part of the rest, residue and remainder of my estate which I then devise and bequeath unto the children of my said wife named in paragraph V hereof, share and share alike. * * * "

Under section 812(e) (1) (B) and (D), supra, an interest passing by the will of the decedent to the surviving spouse may not be included in the marital deduction where the terms of the will provide that upon the occurrence of an event or contingency, which may occur six months after decedent's death, the interest passing to the surviving spouse will terminate or fail.

The Government concedes that under the first paragraph of Article VIII of the will of Charles G. Smith, deceased, the plaintiff received a vested interest in the bequest therein made but contends that the contingency of her surviving until the distribution of such bequest contained in the second paragraph of Article VIII created the possibility of divestment which makes interest passing to her under Article VIII a "terminable interest" and, therefore, one not qualifying for the marital deduction under the above specified provisions of section 812, supra. The language of paragraph two so effecting is said to be: "In the event that my said wife should * * * die before distribution to her of the bequest herein provided for her * * * then * * * the bequest to her shall lapse * * * ."

The plaintiff takes the position that the property passing under Article VIII of the will "vested absolutely" in her. Thus, the precise issue in dispute appears to be whether the property passing under Article VIII "vested absolutely" in the plaintiff or vested "subject to divestment in the plaintiff."

Considering the contentions of the parties, the resolution of this issue depends upon whether the second paragraph of Article VIII is clearly and easily understood "free from any possible indefiniteness, uncertainty, or ambiguity," and "clear and unambiguous," as the Government argues; or whether, as the plaintiff insists, the provisions of the second paragraph, and particularly the language last above quoted, are so indefinite, uncertain, and ambiguous as to meaning, and in such hopeless conflict with the first paragraph of Article VIII of the will and as well, with Article VII thereof, as to render said second paragraph void and of no effect.

The Court is of the opinion that the contention of the plaintiff must be upheld.

The most persuasive decision in this field which has been called to the Court's attention is Kellar v. Kasper, D.C.S.D. 1956, 138 F.Supp. 738, 739, wherein it was held that the language "if living at the time of distribution of my estate," was ambiguous and void, and that the widow under the Kellar will took a vested estate which was indefeasible and not subject to divestment and that the widow was entitled to the full marital deduction. Consistently, in the case of Steele v. United States, 1956, 146 F.Supp. 316, the United States District Court for the District of Montana, also held that the marital deduction was allowable by reason of the vesting of the absolute title of the property as of the time of the testator's death. In that case the provision of the will in question read as follows: "In the event my said wife, Blanche C. Steele, should not be living at the time Decree in Distribution of my estate is made hereunder, then that portion of my estate which she would have received had she lived, I give, devise, and bequeath to my son and daughter." In reaching the conclusion expressed, the Montana Court followed the decisions in Kellar v. Kasper, supra.

The Government attempts to distinguish the decision in Kellar v. Kasper, supra, from the case at bar on two grounds: first, that the Kellar case involved the application of South Dakota law rather than Colorado law; and, second, that the "condition subsequent" was not as clearly set out in the Kellar case as in the case at bar. A study of the Kellar decision, supra, indicates that the Court therein concluded that the law of South Dakota definitely favored the rule of early vesting of title to property and that the Supreme Court of South Dakota had also shown a "definite tendency to favor a substitutional construction rather than a successive construction." In this respect the law of South Dakota seems to be very much like that of Colorado, since the Supreme Court of this state, in many decisions, has indicated a consistent policy to favor the early and indefeasible vesting of estates: Liebhardt v. Avison, 1951, 123 Colo. 338, 229 P.2d 933; Jones v. Pueblo Savings & Trust Co., 1939, 103 Colo. 455, 87 P.2d 2; Hignett v. Sherman, 1924, 75 Colo. 64, 224 P. 411, and Carmichael v. Cole, 1928, 83 Colo. 575, 267 P. 408. Thus, there appears to be no valid basis for this distinction.

The second claimed distinction between the Kellar case and the one at bar is that the "condition subsequent" was not as clearly set up in the Kellar case. The will in the Kellar case states, "if living at the time of the distribution of my estate" as to a specific bequest of $100,000, and provided in the residuary bequest that "if living at the time of the distribution of my estate, I give, devise and bequeath to my wife" one-third of the residuary estate. The will in the case at bar provided that, "I devise and bequeath unto my wife, Helen L. Smith, all the rest, residue, and remainder of my estate * * * to be her absolute property," and in a separate but following paragraph then provided that if she died before distribution to her of the bequest, then the "bequest to her shall lapse and become a part of the rest, residue and remainder of my estate which I then devise and bequeath unto the children of my said wife * * * " (with further provisions as to the distribution in the event of the death of one or more of the children).

There is undoubtedly a difference between the words used in the two wills, but this difference seems to me to suggest that insofar as the contention of the Government is concerned the "condition subsequent" is more clearly set out in the Kellar will than in the Smith will and yet, notwithstanding in the Kellar case, as has been said, the Court firmly held that the widow took a vested estate which was indefeasible and not subject to divestment and that she was entitled to the full marital deductions.

I also feel that the Government is in error in assuming that the distribution to the plaintiff under the Colorado statutes could not possibly occur until the passage of at least six months after issuance of letters of administration. Although it is true that claims may be filed against an estate for a full six months after issuance of letters of administration, under section 152-14-5, Colorado Revised Statutes, 1953, legacies may be ordered paid by the Court whenever it appears that there are sufficient assets to satisfy all legacies and all demands against the estate. Under section 152-14-8, Colorado Revised Statutes, 1953, executors or administrators may require a bond and security to be given to indemnify them against any debts which may afterward appear against the estate, and under such bonding provision legacies have on occasion been paid in estates under probate in Colorado courts before the expiration of the six months' period for presentation of claims. See Fenn v. Knauss, 1930, 87 Colo. 175, 285 P. 945. Thus, the same ambiguities and uncertainties as to the time of divestment discussed in the Kellar opinion, although therein based upon South Dakota law, have pertinency here. In this connection, the opinion in Kellar v. Kasper, stated:

" * * * When, under the wording of Mr. Kellar's will, would such claimed divestment take place? The

will reads 'if living at the time of the distribution of my estate.' This could mean under South Dakota law that she survive any one of four different times and occasions in the operation of South Dakota wills-and-property law. It could [1] refer to the 'distribution' effected by the law which occurs on the death of the testator. Again, there is nothing in South Dakota law that prevents an executor from paying a cash legacy immediately upon his appointment and qualification if he is certain that the estate is solvent and that in due course there will be sufficient funds after paying such legacy to pay the funeral expenses, expenses of administration and claims. Thus [2] 'distribution' could mean the time when the legacy provided under Item 2 of the decedent's will was actually paid to Mrs. Kellar. (Note the last sentence of this item: 'It is my will and I do so direct that this legacy shall be paid in full prior to the payment of any other legacy, bequest, or devise.') It could also mean and refer to the actual entry of a decree of 'distribution', and here, again, under South Dakota law, this could be at the time of the entry of a partial decree of distribution, which is common, particularly in the case of large estates such as this one, or, where the estate is apt to remain open for any great length of time, or it could mean the actual entry of a final decree of 'distribution', which would be when the estate had been completely administered and was ready to be closed."

It also seems to the Court that the provisions of Article VII of the Smith will, wherein it was provided that "under no circumstances shall the share left my said wife be less than a full one-half (½) of all my estate," is in complete and hopeless conflict with the construction of the second paragraph of Article VIII of the will suggested by the Government.

As viewed by the Court, nothing expressed in the opinion in the case of Burden v. Colorado National Bank, 116 Colo. 111, 179 P.2d 267, is inconsistent with the conclusions I have reached herein. Therein, the vested estate was subject to being divested upon the happening of a condition subsequent, i. e., the death of one of the children before the death of the daughter of the testator which certainly and positively fixed the date of divestment as the date of the death of any of the children of the daughter of the testator. Nor, because of the factual difference does the decision in Eggleston v. Dudley, D.C.W.D. of Pa.1957, 154 F. Supp. 178, also relied upon by the Government, have any decisive effect in the proceeding at bar.

In view of the conclusions just reached with reference to the point above discussed, it is unnecessary to consider the question, raised by the plaintiff, as to whether the second paragraph of Article VIII of the will violates the rule against perpetuities.

As has been mentioned, the second question to be decided is whether the Government properly included as a part of the gross estate of decedent, Charles G. Smith, the value of certain interest income certificates, less the value of the life estate of decedent's wife, Helen L. Smith.

Each of the certificates provided that the interest accruing thereon would be paid to plaintiff, provided she be living, and otherwise to her husband, Charles G. Smith. There was also a provision in each stating that plaintiff could withdraw the full "amount upon which she is then entitled to receive interest payments" subject to a three-month notice requirement.

The certificates also provided that if plaintiff failed to withdraw the principal amounts represented by the interest income certificates from the company, and she predeceased her husband, withdrawal rights and the right to the interest payments would revert to the husband, Charles G. Smith. The parties are

agreed that both of the interest income certificates were outstanding at the time of the death of Charles G. Smith.

The Government contends that this factual situation brings the interest income certificates squarely within the terms of section 811(c) (1) (B), supra, and relies exclusively on the cases of Commissioner of Internal Revenue v. Nathan's Estate, 7 Cir., 1947, 159 F.2d 546, and Marks v. Higgins, 2 Cir., 1954, 213 F.2d 884, as upholding its position. Notwithstanding the reliance placed upon these cases by the Government, I believe in reality the decision in the Nathan case points out the fallacy in the Government's contention. In the opinion in that case, 159 F.2d at page 548, it was said:

> "Stated differently, was the period during which his contingent estate therein existed ascertainable without reference to his death or did the period of the contingent estate which decedent retained in the trust he created have a possible ending before his death?"

Thus, in the Nathan case the only manner in which a contingent estate of the brother could have been terminated was by his death and there was no other possible ending before his death of the contingent estate owned by the brother. In the case at bar, however, the contingent estate of the grantor could have been terminated at any time before his death by the plaintiff by simply making a written request for the payment of the principal amount of the interest income certificates. If the plaintiff had had no right of withdrawal then the case at bar would be similar on its facts to those in the Nathan case. The case of Marks v. Higgins, supra, is grounded upon the Nathan decision and upon a generally similar factual situation. The presence herein of plaintiff's right of withdrawal, in the opinion of the Court, removes the interest income certificates in concern from the purview of either of the above mentioned decisions.

Historically, starting with Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, practically all possible reversionary interests were included in the gross estate of decedent including those arising by operation of law. Cf. Goldstone v. United States, 325 U.S. 687, 65 S.Ct. 1323, 89 L.Ed. 1871; Estate of Spiegel v. Commissioner of Internal Revenue, 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330, and Commissioner of Internal Revenue v. Church, 1949, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288.

The latter two cases cited resulted in the passage of section 7 of the Technical Changes Act, approved October 25, 1949, 63 Stat. 891, referring to section 811(c), 1939 I.R.C. (Cum.Bul. 1949–2, p. 278). This Technical Changes Act included reversionary interests in decedent's gross estates as to property transferred prior to October, 1949 (The transfers here were in 1942 and 1944) *only* if such interests were *expressly* retained by decedent, and possession or enjoyment by ultimate beneficiaries could be obtained *only* by surviving decedent. (For a more detailed historical development, see Costin v. Cripe, 7 Cir., 1956, 235 F.2d 162.

Federal Regulation 81.17(c), passed by the Treasury Department, states:

> "A transfer of an interest in property made by the decedent prior to October 8, 1949 is not 'intended to take effect in possession or enjoyment at or after his death' unless possession or enjoyment ' of the transferred property can, through ownership of such interest, be obtained *only* by surviving the decedent. * * * where possession or enjoyment of the transferred property can be obtained either by surviving the decedent or through the occurrence of some other event (as, for example, the exercise of a power), the transfer shall not be considered as intended to take effect in possession or enjoyment at or after the decedent's death unless, from a consideration of its terms and circumstances as a whole, the other event is deemed to be unreal, in which case such other event shall be disregarded." (26 C.

F.R., p. 23 Cumulative Pocket Supplement, Jan. 1, 1957); also Cumulative Bulletin 1951–1, § 81.17(c), pp. 78–79. (Emphasis supplied.)

■ Under the terms of section 811 (c) (1) (C) and the regulation above, three conditions must exist before a property interest transferred during life prior to October 8, 1949, which takes effect at the death of decedent (other than a bona fide sale for an adequate consideration in money or money's worth) is included in decedent's gross estate. The interest is included if: 1) the decedent retains for himself or his estate, including a power of disposition, a reversionary interest in the transferred property by the *express* terms of the instrument of transfer (not by operation of law); 2) the value of the reversionary interest immediately before the death of the decedent exceeds five per cent. of the value of the entire transferred property; and 3) possession or enjoyment of the property, through ownership of the interest, can be obtained *only* by surviving the decedent, i. e., whether possession can be enjoyed by the beneficiary before the death of the grantor. Cf. Costin v. Cripe, supra, 235 F.2d 165, 166; also 60 Harvard Law Review, 989.

■ In the case before this Court, the reversionary interest was expressly retained by decedent but possession or enjoyment by the ultimate beneficiary could be had not only by surviving decedent but also by plaintiff's exercise of the conferred power of termination.

Therefore, the "income certificates" should not have been included in decedent's gross estate.

■ In the opinion of the Court the findings of fact and conclusions of law expressed in this memorandum opinion are sufficient to meet the requirements of Rule 52(a) Fed.Rules Civ.Proc., 28 U. S.C.A., and the preparation and filing of formal findings of fact and conclusions of law may be dispensed with.

In the agreed statement of facts, the parties stipulated that "in the event the Court shall find for the plaintiff in this action, either in whole or in part, the parties hereby agree to submit the question of the amount of the refund due the plaintiff to the Internal Revenue Service for recomputation. The parties further agree to request the Court to enter an order based upon the recomputation of the Internal Revenue Service after the said recomputation has been completed. In the event that the parties shall not be able to agree on the amount of the refund due after the recomputation has been completed, the matter will be submitted to the Court for determination."

Counsel for the parties will proceed in accordance with the foregoing stipulation and in due course counsel for the plaintiff will prepare and serve judgment in accordance herewith. If stipulation as to the form thereof cannot be reached, its settlement may be submitted to the Court on notice.